In re Joseph A. TORCISE, Jr., d/b/a Joe Torcise Farms and Tijodee, Inc.

**COMMUNITY BANK OF HOMESTEAD,** Appellant,

v.

**Joseph A. TORCISE, Jr., Appellee.**

Nos. 89–16287–BKC–AJC, 89–16286–BKC–AJC.

No. 94–0994–CIV.

United States District Court, S.D. Florida.

Sept. 22, 1995.

Robert M. Hustead, Homestead, FL, for appellant.

Martin L. Sandler, Miami, FL, for appellee.

## MEMORANDUM OPINION AND ORDER REVERSING IN PART THE ORDER OF THE BANKRUPTCY COURT DATED FEBRUARY 23, 1994

ARONOVITZ, District Judge.

The appellant, Community Bank of Homestead, appeals from the portion of the Bankruptcy Court's Order, dated February 23, 1994, 1994 WL 162404, which allowed the claim of Joseph A. Torcise, Jr., the debtor, for surcharge to reduce the Bank's secured claim. Torcise cross-appealed the portion of the Order that approved payment of the claim as provided in a state court foreclosure judgment, specifically the accrual of interest on interest. The court heard oral argument on the merits of the appeal and cross-appeal on September 12, 1995, and has carefully considered the briefs filed, the argument of counsel, the entire record and applicable law, and is otherwise fully advised in the premises.

### Factual and procedural background

Torcise, a tomato farmer in Homestead, filed a chapter 11 petition on November 30, 1989. On his Schedule A of liabilities, Torcise listed the claim of Community Bank for $1,499,476.86 on a loan secured by a lien on real property and farm equipment. On March 29, 1991, the Bankruptcy Court confirmed, over the Bank's objection, a liquidating chapter 11 plan. The plan provided that the real property would be abandoned to the Bank, and the stay would be deemed lifted to permit the Bank to pursue its remedies regarding the land. The state court entered a foreclosure judgment concluding that Torcise owed the Bank $1,961,300.91, as of April 1, 1991. The Bank subsequently purchased the land, which the parties stipulated is worth $860,000. The farm equipment, sold over time, yielded $2,218,774.76 in proceeds. The total collateral value is therefore $3,028,774.76.

To the extent that the value of its collateral exceeds the amount of its claim, the Bank is oversecured.[1] The Bank moved for release of the proceeds from the farm equipment to satisfy the amounts owing for principal, interest, attorney's fees and expected costs of disposing of the land. The debtor opposed and sought to recover "surcharges" for the cost and expenses of preserving and disposing of the equipment, under 11 U.S.C. § 506(c).

After an evidentiary hearing before visiting Judge James G. Mixon, the Bankruptcy Court allowed for the debtor the surcharge of $190,298.13, to reduce the Bank's claim. The court also held that the Bank would earn interest on its claim as provided in the state court foreclosure judgment in the amount of $1,961,300.91, plus interest at the state court judgment rate of 12%.[2] The Bank appealed the surcharge. Torcise cross-appealed the imposition of interest on the interest portion of the foreclosure judgment.

### Discussion

Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.*, 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the Bankruptcy

---

1. The record does not indicate that the Bankruptcy Court made a formal determination regarding the amount of the allowed secured claim and whether it was oversecured. Nevertheless, the parties and the Bankruptcy Court proceeded as if that determination had been made and the Bank was oversecured. Neither party disputes the oversecured status of the Bank's claim.

2. The Order also granted and denied other relief, including the allowance of $34,978.50 in attorneys fees for the Bank. Those holdings are not relevant to this appeal and cross-appeal.

Court are subject to review under an abuse of discretion standard. *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir.1990). Conclusions of law are subject to de novo review. *In re Chase & Sanborn Corp.*, 904 F.2d at 593; *In re Sublett*, 895 F.2d 1381 (11th Cir.1990).

### THE SURCHARGE

█ Under 11 U.S.C. § 506(c), the trustee or debtor-in-possession may recover a surcharge for costs of maintaining and disposing of collateral which directly benefit the secured creditor. Torcise requested that the Bankruptcy Court reduce the Bank's secured claim by $536,213.54 expended by the estate for the maintenance and sale of the farm equipment, pursuant to § 506(c) and the amended joint liquidating plan.

Under § 1141(a) of the Bankruptcy Code, "the provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not such creditor ... has accepted the plan." 11 U.S.C. § 1141(a). Prior to confirmation, the Bank objected to the plan's treatment of its claim and collateral, but the plan was confirmed over the objection and became enforceable against the Bank.

The amended joint liquidating plan provides that the "personal property securing the claim of Community [Bank] shall be sold by the Debtor, pursuant to Article VII hereof." Amended Joint Liquidating Plan p. 7. Article VII, entitled "Means for Execution of the Plan," provides the following:

> The Proponents will designate and appoint a Committee ... (the "Sales Committee"). The Sales Committee, together with the Debtor's representative, will act as liquidating agents for sale of the assets of this estate.
>
> \*  \*  \*  \*  \*  \*
>
> All proceeds resulting from the sale(s) of the Debtor's assets shall be placed in an interest bearing Joe Torcise Liquidating Trust Account....
>
> It is contemplated that **to effect the maximum sale price for the personal property** of the Debtor, that certain items of equipment will require maintenance and repair. It will also be necessary for the Debtor to pay certain ongoing expenses including rent and payroll for the employment of personnel to maintain, assist in sale of the equipment, keep records of the Debtor, and pay for insurance in the property. The expenditure of these funds will be subject to the Sales Committee's approval. **Payment of their expenses shall be made from the proceeds of the sale(s) as made from time to time and shall be deemed an administrative surcharge.**

Plan pp. 11–13 (emphasis added). From a plain reading of the language, the plan calls for the incurred expenses "to effect the maximum sale price." Those expenses incurred for that purpose "shall be deemed an administrative surcharge." The debtor filed a claim to surcharge $536,213.54. In determining whether all of it should be allowed, the Bankruptcy Court looked to the Bankruptcy Code section which governs administrative surcharges:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c).

█ The Bankruptcy Court determined that, consistent with the plan and 11 U.S.C. § 506(c), $190,298.13 in expenses were reasonable, necessary, expenses of preserving and disposing of the collateral to the benefit of the Bank.[3] The court held that "the estate is allowed an administrative surcharge of $190,298.13 **against Community Bank's claim.**" Order p. 19 (emphasis added).

The Bank does not dispute the amount of the surcharge, only how the surcharge was applied. The court reduced the Bank's secured claim by the amount of the allowed surcharge. Oversecured, the Bank argues the surcharge should simply reduce the amount of collateral available to secure its

---

3. As Torcise established in his brief, that determination is a finding of fact reviewable on a clearly erroneous standard. *Matter of Senior–G & A Operating Co., Inc.*, 957 F.2d 1290, 1299 (5th Cir.1992). That finding is not disputed and is not clearly erroneous.

claim.[4] In other words, subtract from the total collateral value ($3,078,774.76) the amount of the surcharge ($190,298.13), leaving $2,888,476.63 to cover the secured claim with interest, fees and costs. The Bank asserts that the security agreement specifies and entitles them to such additional amounts. This treatment, the Bank suggests, is consistent with U.C.C. law and with Florida state law. U.C.C. § 9–504; Fla.Stat. § 679.504(1).

■ Torcise responds that the security agreement no longer governs, because the confirmed chapter 11 plan of reorganization governs the liquidation and distribution of the estate's assets. Any issues which could have been raised regarding the plan are res judicata. *In re Constructors of Florida, Inc.,* 349 F.2d 595 (5th Cir.1965).

The language of the plan directs that payment of the expenses "shall be made from the proceeds of the sale(s)" and "shall be deemed an administrative surcharge." Not only does the plan direct payment from the proceeds, but § 506(c) clearly provides for recovery of administrative surcharges "from property securing an allowed secured claim ..." It does not direct recovery from the claim or the claimant, but from the property.

■ This construction is consistent with the scheme of § 506. Subsection (b), permits oversecured creditors to earn post-petition interest to the extent of the value of the collateral securing the claim. 11 U.S.C. § 506(b). A creditor is oversecured and entitled to post-petition interest only when the value of the collateral, **after recovery under § 506(c)**, exceeds the amount of the claim. It follows that an administrative surcharge under § 506(c) should be charged against the collateral, not the claim.

■ Where the statutory scheme of the Bankruptcy Code is coherent and consistent, the court generally need not inquire beyond the statute's language. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–1031, 103 L.Ed.2d 290 (1989). The administrative surcharge does not reduce the Bank's secured claim; it reduces the value of the collateral available to satisfy the claim.

### THE CROSS APPEAL OF INTEREST ON INTEREST

■ In allowing that the Bank's claim be paid, the Bankruptcy Court directed the following: "Interest on the indebtedness shall accrue as provided in the foreclosure judgment of the Circuit Court ... *See Rake v. Wade,* —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)." Order p. 20. The state court broke down the total judgment as follows:

| | |
|---|---|
| Principal | $1,499,476.86 |
| Interest | 441,360.58 |
| Abstract charge | 298.00 |
| Taxes | 18,577.97 |
| Late fees | 1,400.00 |

TOTAL JUDGMENT ...... $1,961,300.91.

The judgment provided that post judgment interest would accrue at the statutory rate of 12% simple interest. Torcise objects to the accrual of interest on the total judgment to the extent that it includes interest on the interest.

First, the *Rake v. Wade* decision does not permit or forbid interest on interest; it merely permits interest on principal and any arrearage for oversecured claims at the time of the bankruptcy petition. 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290.

The state of Florida is divided on the issue, with the Florida Supreme Court never having decided the issue. Torcise argues that this court should follow the state court of the Eleventh Judicial Circuits, in which this court is located. In *Perez–Sandoval v. Banco de Commercio, S.A. C.A.,* 582 So.2d 179 (3rd D.C.A.1991), the Court of Appeals held that the accrual of interest on interest is illogical and affirmed several judgments denying interest on interest. The Bank cites this court to another Florida court that has allowed interest on interest. *Peavy v. Dyer,* 605 So.2d 1330 (Fla. 5th D.C.A.1992).

■ Ordinarily, creditors are not allowed a claim for interest accruing on their debts during a bankruptcy proceeding. *United*

4. See supra, fn. 1.

*Savings Association v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Section 506(b) allows only oversecured creditors to receive interest on their secured claim and only to the extent they are oversecured:

> (b) To the extent that an allowed claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there **shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges** provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (emphasis added).

■■■ A filed proof of claim is deemed allowed unless a party objects. 11 U.S.C. § 502(a). If such an objection is made, the bankruptcy court determines the amount of the claim "as of the date of the filing of the petition ..." 11 U.S.C. § 502(b). Secured creditors are not, however, required to file a proof of claim, and in this case, the Bank filed no proof of claim.[5] Regardless, any creditor's claim in bankruptcy exists, if at all, as of the petition date. *See* 11 U.S.C. §§ 101(5) and (10). To the extent that a creditor's claim is oversecured, it earns interest as of that petition date. The extent by which a claim is oversecured is a determination made near the conclusion of the case at or around the time of the plan confirmation. *See In re Delta Resources, Inc.*, 54 F.3d 722, 729 (11th Cir.1995). More importantly, the determination is made on the basis of the claim and as it existed at the time of the petition date, because post-petition interest is limited to the amount by which the claim was oversecured at that time. *Id.*

Therefore, the allowed claim should not be based upon a state court's determination a year after the commencement of the case. The plan provided that the stay would lift for the purpose of allowing the Bank to foreclose on the real property, not to litigate the value of the entire claim or determine the extent of its ability to earn interest. Plan pp. 8–9.

**5.** No party, including the Bank, objected to the secured claim as the debtor had listed it—

■■ Under operation of § 506(b), the secured claim earns interest on the amount of the claim, only to the extent that it is oversecured. The amount by which a claim is oversecured must be determined as of the petition date. That amount, "the equity cushion," is reduced by the amount of any § 502(c) administrative surcharge. The claim earns interest only to the extent of the reduced equity cushion. Interest accrues on the total amount of the claim as of the petition date and at the contract rate of interest provided for in the security agreement. *Delta Resources*, 54 F.3d at 730; *In re Singer Island Hotel, Ltd.*, 95 B.R. 845, 848 (Bankr. S.D.Fla.1989).

## Conclusion

Accordingly it is

ORDERED AND ADJUDGED that the Bankruptcy Court's Order is REVERSED to the extent that it reduces Community Bank's claim by the amount of the administrative surcharge. The administrative surcharge reduces the amount or value of the collateral securing the Bank's claim. It is

FURTHER ORDERED AND ADJUDGED that the Bankruptcy Court's Order is reversed to the extent that it awarded interest on the basis of the post-confirmation state court foreclosure judgement. Interest should be computed on the basis of the amount of the claim at the time the bankruptcy petition was filed and at the contract rate of interest.

DONE AND ORDERED.

$1,499,476.86.