**In the Matter of ESTATE DESIGN & FORMS, INC., Debtor.**

**HEIDELBERG HARRIS, INC., Appellant,**

**v.**

**G.E. GROGAN, Chapter 7 Trustee of Estate Design and Forms, Inc., Appellee.**

**Civil Action Nos. 95–CV–40346– FL, 95–CV–40386–FL and 95–CV–40438–FL.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 12, 1996.

---

Laura J. Eisele, Dykema Gossett, Detroit, MI, for plaintiff.

Donald J. Hutchinson; Miller, Canfield, Paddock & Stone, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

### I.

Before the Court are three consolidated appeals by Heidelberg Harris, Inc. ("Appellant" or "Heidelberg") from two orders and a judgment of the Bankruptcy Court. The action arises out of bankruptcy proceedings regarding Estate Design & Forms, Inc. ("Debtor"). Debtor first filed for Chapter 11

reorganization, but the proceedings were converted to Chapter 7 on September 23, 1993, and G.E. Grogan ("Trustee") was appointed as Chapter 7 Trustee. Among the properties within Debtor's possession at the time of the Trustee's appointment was a Heidelberg press ("Press"), in which Appellant retained a purchase money security interest. The Press had been purchased in February 1993. The Debtor actually had never made any payments on the principal debt of $723,816.00.

Upon conversion of the bankruptcy proceedings to Chapter 7, the Appellant repeatedly requested that the Trustee stipulate to relief from the automatic stay and allow Appellant to remove the Press from Debtor's leased property so that it could be sold by Appellant. After receiving an appraisal of the Press, and being informed of Appellant's security interest therein, on November 18, 1993, the Trustee agreed to Appellant's relief from the automatic stay having determined the Debtor had no equity in the Press. Between September 23, 1993 and November 18, 1993, Trustee had sought permission from Appellant to sell the Press at auction, requesting that Appellant consent to pay the fees of the auctioneer, the Trustee's fees, and fees of Trustee's counsel. Trustee also consistently sought consent from Appellant to pay the rent of the leased premises for storage of the Press from September 23, 1993, the date of conversion to Chapter 7. After Trustee consented to lift the automatic stay, and the stipulated order was entered by the Bankruptcy Court, Appellant removed its Press and has since sold it. The proceeds from the sale of the Press were deposited into Appellant's general account and Appellant now claims that such sums have been spent. (Appellant apparently has funds in this account although it argues that the proceeds are long gone).[1]

On September 2, 1994, Trustee filed his motion to surcharge Appellant for rent of the leased premises upon which the Press was stored from September 23, 1993 until the Press was removed in December 1993. Trustee also sought to surcharge Appellant for electricity, gas, locksmith's services, and other unspecified labor of the estate, all expenses allegedly incurred for preservation of the Press while it remained within Trustee's possession. A hearing on the motion was held on October 27, 1994, and the Bankruptcy Court granted the motion for surcharge on the record at the hearing. After ruling, the court granted to the parties the opportunity to conduct discovery and indicated that there would be further proceedings as to the amount of the surcharge.[2]

In its "Surcharge Order" of August 2, 1995, which followed the evidentiary hearing, the Bankruptcy Court determined that the amount of the surcharge should be $13,606.63. In determining this figure, the Bankruptcy Court accepted Trustee's argument that Appellant should be responsible for its share of the rent, heating expenses, and locksmith's services as these expenses were incurred in preservation of the Press, all reasonably and necessarily incurred to the benefit of Appellant, the secured creditor. As argued by Trustee, the court apportioned the expenses among the three secured creditors based upon the value of their respective collateral, Appellant's comprising 90% of the total. In so finding, the Bankruptcy Court rejected Appellant's argument that the expenses should be apportioned according to the actual space required for storage of the various items, not their value.

In these consolidated appeals, Appellant challenges the order of surcharge, the order of the Bankruptcy Court denying reconsideration, and the judgment entered against Appellant personally.

---

1. In his response brief, the Trustee alleges that part of the Press, with a value of approximately $70,000.00, was still in Appellant's possession at the time the motion to surcharge was filed with the bankruptcy court.

2. In its appellate brief, Appellant indicates that "[b]oth the Trustee and Heidelberg were under the impression that the [bankruptcy] Court granted the request for an evidentiary hearing, to determine not only the amount of the surcharge, but also to preliminarily determine if a Surcharge was even appropriate." Appellate brief at 5. Even if this were true, however, the parties' misunderstanding does not vacate the action of the bankruptcy court in granting the motion for surcharge at the October 27, 1994 hearing.

## II.

In review of a bankruptcy court's decision on appeal, its findings of fact must be accepted unless clearly erroneous. *In re Ward,* 857 F.2d 1082, 1083 (6th Cir.1988). Issues of law, however, are subject to *de novo* review. *In re Batie,* 995 F.2d 85, 88 (6th Cir.1993). In this case, there is an initial question as to which issues involved are matters of law and which are questions of fact. Clearly, whether a bankruptcy court can, pursuant to 11 U.S.C. § 506(c), surcharge a secured creditor personally (as opposed to surcharging the collateral or its proceeds) is a question of law. Whether evaluation of the elements necessary to surcharge are met, however, may very well include factual issues requiring deferential review. Nevertheless, in this case, whether the issues are questions of law or fact is academic as the controlling factual issues were agreed upon in the joint prehearing statement of the parties. With regard to the merits, the parties seek a determination as to whether the surcharge under § 506(c) against Appellant personally rather than *in rem* was proper.

As a general rule, administrative expenses of the Chapter 7 Trustee are not chargeable to secured creditors, but must be paid for out of the general bankruptcy estate from unsecured funds. However, § 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). To prevail under § 506(c), the Trustee "bears the burden of proving that the costs were reasonable, necessary, and a benefit to the secured party." *In re Ferncrest Court Partners, Ltd.,* 66 F.3d 778, 782 (6th Cir.1995). In the alternative, a Trustee also can recover expenses where the secured party consented, either directly or impliedly, or itself caused the expenses. *Id.*

## III.

In this appeal, Appellant challenges the Bankruptcy Court's action on three grounds:

(1) Trustee cannot surcharge a secured party directly under 11 U.S.C. § 506(c); (2) Trustee did not meet its burden of proof that it was entitled to a surcharge; and (3) the Bankruptcy Court's orders and judgment violate a long established policy of the bankruptcy code. The first and third assignments of error appear to be issues of law. The second would seem to involve questions of fact.

### A.

With regard to issue one, Appellant argues that the plain language of § 506(c) precludes a surcharge against a secured creditor personally, permitting only a surcharge upon the collateral which has received a benefit or the proceeds therefrom, usually following a sale of the collateral by the Trustee. In support of this argument, Appellant provides two district court cases decided on appeal from the bankruptcy court. In *In re Orfa Corp. of Philadelphia,* 170 B.R. 257 (E.D.Pa.1994), the district court held that the bankruptcy court improperly imposed liability directly against a secured creditor. *Id.* at 275. The court relied upon Appellant's exact argument, that "[o]n its face, the clear language of the statute ... allows a trustee to 'recover *from property* securing an allowed secured claim.' 11 U.S.C. § 506(c) (emphasis added). By contrast, it contains no provision for direct recovery from the secured creditor." *Id.* at 274. The district court ordered that upon remand the bankruptcy court must limit any surcharge to the value of the secured property or the proceeds from the sale thereof. *Id.* at 275. This case is persuasive authority, directly on point and is supportive of Appellant's argument.

The other case relied upon by Appellant, *In re Torcise,* 187 B.R. 18 (S.D.Fla.1995), does not directly support Appellant's argument, however it does seem to contemplate that a surcharge under § 506(c) applies only to the value of the collateral and not against the secured creditor personally or its claim. *Id.* at 22.

This issue is not directly relevant and does not control the outcome of this appeal. Even if Trustee can recover only from the collateral or its proceeds, as indicated previously,

Trustee contends that at the time the motion was filed (and possibly even today) there was still a part of the Press that had not yet been sold. Moreover, even if this were not the case, the proceeds of the sale may be attachable since they are traceable to Appellant's general account. Since this is a review of the Bankruptcy Court's order and judgment, the proper procedure, if necessary, would be to remand for further findings of fact and a clear basis for what property or proceeds are being surcharged.

### B.

■ The second issue, whether the Bankruptcy Court properly found that Trustee met his factual burden on the various elements of the § 506(c) claim, is reviewed for clear error. Here, however, there is a question of law mixed into this analysis. A telling case is *In the Matter of Trim–X, Inc.,* 695 F.2d 296 (7th Cir.1982). There, the Seventh Circuit determined at what point the expense of storage of collateral benefitted the secured creditor as opposed to the bankruptcy estate in general. The reasoning of this case would narrow the period of time in which a Trustee could surcharge a secured creditor for storage and other related "preservation expenses" where the collateral eventually is abandoned by the Trustee to the secured creditor.

The main question to be resolved here is whether the expenses for which the Trustee sought the surcharge fits the statutory purpose—that is, to make a secured creditor responsible for expenses incurred by the trustee which provides some special benefit to the secured creditor.

The issue should be analyzed within its usual context. In every bankruptcy proceeding involving secured creditors, the Trustee takes possession of any contested property and has the right to retain possession until abandonment. This is true whether it be by court order or by notice with no reaction by those entitled to object, usually the unsecured creditors. The Trustee retains possession of the property in order to determine its value. This allows the Trustee to fulfill his duty to determine if the estate could be benefited by the asset—i.e., does its value

exceed the debt it serves? Abandonment cannot take place during this period.

Obviously, the secured creditor gains no benefit from being deprived of the possession of its collateral during the period this determination is being made. The secured creditor cannot use the chattel and cannot sell the chattel. The Trustee's possession, however, is beneficial to the Trustee solely for the possibility that the chattel may be worth more than the debt it secures; if so, the estate and its general creditors will benefit by its sale and the subsequent receipt of a portion of the sale proceeds. Thus, retention of the property is not for the benefit of the secured creditor and normal expenses of preservation of the asset during this time are deemed administrative expenses benefitting only the estate—even if it is ultimately determined that there is no benefit.

But there may be special preservation expenses incurred during the period in which the Trustee is performing his evaluation of the property, which may result in some special benefit to the secured creditor. If, for example, in order to preserve the value of a piece of operating equipment it must be operated regularly during this period, and to operate it would require repair of the machine by the Trustee which repair will and does benefit the secured creditor when the creditor receives possession, this would be an example of a special benefit which might be passed on by a surcharge.

■ As a matter of law, the analysis *should focus upon whether the expenses for which surcharge is sought are simple admin-istrative expenses or special preservation expenses benefitting the mortgagee.* Those expenses simply associated with retaining possession of the secured asset during the period the Trustee performs his duties are normal administrative expenses because they were incurred with no special benefit to the secured creditor and with the only possible benefit being to the bankruptcy estate. On the other hand, where preservation of the secured asset requires the expenditure of funds which actually creates a special benefit, such as improving the asset, increasing its value, etc., a surcharge is justified.

Mere expenses of retaining possession during the period before abandonment are not subject to a surcharge. The expense elements that compose the surcharge in the Bankruptcy Court's order—rental for the space occupied by the machine, heating expenses and locksmith services—were all necessary solely because the Trustee retained possession and provided no special benefit to the secured creditor. They are clearly unlike permanent repairs to the equipment. The Bankruptcy Court's finding that these expenses were incurred by the special Trustee for the benefit of the secured creditor was clearly erroneous. Accordingly, the surcharge was not authorized by the Bankruptcy Code, and the decision of the Bankruptcy Court must be reversed.

## C.

Of course, it follows that the Court need not deal with the issue as to whether the apportionment of expenses was correct as no expenses could be surcharged.

## IV.

For the foregoing reasons, the finding of the Bankruptcy Court that the expenses surcharged against Appellant were incurred by the Trustee to the special benefit of Appellant is REVERSED. The matter is REMANDED for action in accordance herewith.

SO ORDERED.