**In re P.C. LIMITED, Debtor.**

**Appeal of FRENCH MARKET HOMESTEAD FSA.**

**Civ.A. Appeal No. 89–2796. Bankruptcy No. 87–02734–B.**

United States District Court, E.D. Louisiana.

Jan. 22, 1990.

Donald Edward Theriot, Regina Carol Scotto Wedig, Walker, Bordelon, Hamlin, Theriot & Hardy, New Orleans, La. for French Market Homestead FSA, appellant.

Merrill Thomas Landwehr, Landwehr & Hof, New Orleans, La. for PC LTD, appellee.

ARCENEAUX, District Judge.

Before the Court is the appeal of French Market Homestead FSA ("French Market") from the bankruptcy court's order requiring it to pay approximately $800,000.00 in administrative expenses incurred by the debtor P.C. Ltd. ("PC") after confirmation of a reorganization plan in the Chapter 11 proceeding in this case. The Court now affirms the bankruptcy court's ruling.

## Background

PC is a Louisiana partnership whose partners are Raymond Peacock and Lawrence Catha; its principal business purpose was to own and operate the Landmark Hotel ("the hotel") located at 541 Bourbon Street in New Orleans, Louisiana's French Quarter. French Market held a claim against PC for approximately $16,000,-000.00 that was secured by first and junior mortgages on the hotel and vendor's liens and first and junior chattel mortgages on substantially all the furniture, fixtures and equipment located in the hotel. PC continued operating the hotel as debtor in possession during the Chapter 11 proceedings.

French Market filed a plan of reorganization ("the plan") on September 29, 1988 which was confirmed, with several amendments not material to the dispute now before the Court, by the bankruptcy court by order dated February 2, 1989. The plan provided, in pertinent part, that the hotel be sold to French Market or its assignee in exchange for a $10,750,000.00 reduction of French Market's secured claim against the bankruptcy estate. The remainder of French Market's claim was accorded unsecured status.

French Market assigned its rights under the plan to receive the hotel and the aforementioned movable and immoveable property within it to Westinghouse Credit Corporation ("Westinghouse") through a purchase agreement dated February 2, 1989. On March 15, 1989 the debtor conveyed this property to L–I, a Louisiana partnership *in commendam*, as Westinghouse's assignee.

After the sale, PC filed a Rule to Show Cause to have the bankruptcy court require that French Market pay all of the debtor's

unpaid administrative expenses, essentially the costs of goods and services provided to the hotel after the plan's confirmation so that it could operate during this time period. After conducting a hearing, the bankruptcy court granted PC's motion and held that French Market must pay these expenses and later issued findings of fact and conclusions of law supporting this ruling.

The bankruptcy court found that the expenses at issue in this motion were incurred after confirmation of the plan and that they were administrative expenses within the meaning of 11 U.S.C. § 503. Since the expenses were administrative, the creditors fell into the category of the plan's class one creditors who were deemed to have accepted the plan because they were not impaired by it and who are entitled to payment in full. In addition, the Court held that French Market could have taken title to the hotel on February 13, 1989 when the plan was final and unappealable. As a result, French Market's decision to keep the hotel open and operating carried with it the obligation to pay the attendant expenses, especially given that it benefited from the hotel's continued operation.

### Discussion

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The bankruptcy court's findings of fact are accorded deference from this Court and will be overturned only if clearly erroneous. Bankruptcy Rule 8013. Questions of law are reviewed *de novo*. *In re Daniels Head & Associates*, 819 F.2d 914 (9th Cir.1987).

■ The bankruptcy court's determination that the creditors in this case fall within the scope of Class one creditors of the plan is clearly erroneous. The parties have stipulated that the debts at issue in this controversy were incurred after the plan was confirmed. The creditors to whom these debts are owed did not "exist"

*vis a vis* the bankruptcy estate at any time while the plan was drafted, considered and confirmed. These creditors, then, cannot enjoy the rights and be subject to the obligations set out in the plan for this class.

■ Because the expenses at issue here could not have been governed by the plan, any reliance the bankruptcy court may have placed on this finding was improper. This conclusion will not affect, however, the ultimate determination of this matter by the court below because, as the bankruptcy court correctly determined, these debts were administrative expenses within the meaning of 11 U.S.C. § 503. 11 U.S.C. § 503(b)(1)(A) defines administrative expenses as including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." Because it is uncontroverted that the debts at issue on appeal are for goods and supplies with which the hotel operated, they are administrative expenses. These expenses are accorded priority of payment under 11 U.S.C. § 507(a).[1]

■ Generally, administrative expenses must be charged to the bankruptcy estate and not to equity or assets belonging to secured creditors like French Market because the bankruptcy estate's trustee (or, as in this case, its debtor in possession) acts for the interests of the general, not the secured, creditors. *In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); *In re Combined Crofts Corporation*, 54 B.R. 294, 297 (Bankr.W.D.Wis.1985). An exception to this rule, codified in 11 U.S.C. § 506(c), however, provides that the secured creditor will be liable for such expenses if they were incurred to preserve or dispose of the property securing the creditor's interest and if the creditor benefited from the expenditure.[2] The debtor bears

---

1. 11 U.S.C. § 507(a) reads, in pertinent part: (a) The following expenses and claims have priority in the following order;
  (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under Chapter 123 of title 28.

2. 11 U.S.C. § 506(c) provides:
  (c) The [bankruptcy] trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

the burden of proving by a preponderance of the evidence that the expenses were reasonable, necessary and beneficial to the creditor. *In re Cascade Hydraulics and Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987); *In re Trim–X*, 695 F.2d at 301; *In re Hospitality Ltd.*, 86 B.R. 59, 63 (Bankr.W.D.Pa.1988); *In re Settles*, 75 B.R. 229 (Bankr.C.D.Ill.1987); *Crofts*, 54 B.R. at 294.

■ French Market argues that applicable jurisprudence compels the Court to adopt a strict interpretation of the § 506(c) analysis. It argues that "reasonable" expenses are only amounts equal to those which it would have had to spend to foreclose on the property, *Crofts*, 54 B.R. at 297 (and cases cited therein). Similarly, "necessary" costs are only those which are required to prevent deterioration or to help dispose of the property. *Id.* Because the costs of operating the hotel post confirmation were "incurred … when the collateral could have been abandoned and turned over to [French Market]," *Id.*, they "are not 'necessary expenses' within the meaning of section 506(c)." *Id.* French Market also argues for an interpretation of benefit such that only expenses "expended primarily for the benefit of [French Market] and that [French Market] directly benefitted (sic) from …," *In re Flagstaff Foodservice Corp.*, 762 F.2d 10, 12 (2nd Cir.1985), could be charged to it.

This Court cannot adopt such a narrow interpretation of § 506(c), however, when faced with the facts of this case. This is not a case where the debtor or the bankruptcy trustee decides to operate or dispose of an asset of the bankruptcy estate, usually attempting to so cure the bankruptcy, and later tries to saddle the secured creditor with the costs of doing so. *See, In re Cascade*, 815 F.2d at 545–46; *In re Beker Industries, Inc.*, 89 B.R. 336, 343–44 (S.D. N.Y.1988); *Crofts*, 54 B.R. at 298. In this case, French Market made a free and apparently unilateral decision to sell the hotel and to do so as a going concern.

As the bankruptcy court correctly noted, French Market could have foreclosed on the property but it chose not to do so.

Instead, it agreed to "buy" its security and then sell it to a third party; it made these transactions the centerpiece of a reorganization plan that it submitted to, and which was confirmed by, the bankruptcy court. The purchase agreement with Westinghouse and the plan clearly indicate that French Market contemplated selling an operating, not a shuttered, hotel. The plan provides that all administrative creditors would be paid until closing of the act of sale (which was to take place post-confirmation) from cash flow of the hotel's operation. (Bankr.Doc. 85, Section V, P. 1). The purchase agreement calls for "[a]ll sales, receivables, and expenses [to be] prorated as of noon on the day of closing, except that [French Market] will be entitled to *those portions of room rentals applicable for the … night's lodging [previous to the day of closing].*" (emphasis added) (Doc. 3. Exh. 2, P. 9). In addition, before the sale, French Market moved the bankruptcy court (unsuccessfully) to remove the debtors from control of the hotel because the latter had not paid French Market protection payments that had been ordered by the bankruptcy court. In its motion, French Market represented that it was ready and able to operate the hotel and had contacted a hotel management firm to do so immediately. (Doc. 4, Exh. 1). Measuring French Market's potential liability against a foreclosure scenario is totally inappropriate in light of facts showing that French Market clearly intended to sell an operating hotel.

The expenses at issue in this dispute were clearly reasonable and necessary to the hotel's operation since, as intimated by the bankruptcy court, it could not have operated without the goods and services that these debts represent. In addition, French Market clearly benefited from these expenditures. Federal and bankruptcy courts have held that maintaining going concern value can be a benefit to the creditor such that it must bear the costs of this maintenance under § 506(c). *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 94 (3d Cir.1986); *In re Afco Enterprises, Inc.*, 35 B.R. 512, 515 (Bankr.D.Utah 1983). The hotel was certainly worth more

because of the provision of services that allowed to be a going concern as opposed to shuttered and subject to deterioration. *See, In re McKeesport,* 799 F.2d at 94–95; *In re Annett Ford, Inc.,* 64 B.R. 946, 947 (D.Neb.1986). French Market's attempt to assume control of the hotel in order to operate it supports this conclusion.

That this benefit inured purely to French Market's benefit, contrary to its arguments on appeal, is equally clear. As French Market should well know, all of PC's efforts to operate the hotel (and thereby incur the debts at issue here) after the plan's confirmation could not possibly have been part of an attempt to reemerge from Chapter 11 reorganization intact since PC was bound by the plan at that time to sell the hotel to French Market. At the time these expenses were committed, the hotel was bound to be sold to Westinghouse and French Market would receive cash in this exchange. No party to this bankruptcy benefited from the operations except French Market. The bankruptcy court's determination on this score is correct and will not be overturned.

That French Market did not know until after the hotel's sale that these debts were outstanding cannot change this result. These facts might be evidence that French Market did not consent to these debts. It does not bear on the § 506(c) analysis, especially when French Market's plans for the hotel clearly required that such expenditures be made.

IT IS ORDERED that the order of the bankruptcy court granting P.C. Ltd.'s Rule to Show Cause and requiring French Market Homestead FSA to pay the administrative expenses incurred after the reorganization plan's confirmation is AFFIRMED.