In the Matter of P.C., LTD., Debtor.

**FRENCH MARKET HOMESTEAD, FSA, Appellant,**

v.

**P.C. LTD., Appellee.**

**No. 90–3246.**

United States Court of Appeals, Fifth Circuit.

April 24, 1991.

---

**5.** At the very least this is true where, as here, there is no actual fraud.

Donald E. Theriot, Regina S. Wedig, Walker, Bordelon, Hamlin, Theriot & Hardy, New Orleans, La., for appellant.

Ronald J. Hof, Merrill Landwehr, Landwehr & Hof, New Orleans, La., for appellee.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

French Market Homestead was the principal secured creditor of P.C. Ltd., owner of the Landmark Bourbon Hotel in New Orleans French Quarter. By reducing its secured claim one-third, or over $5,000,000, French Market was able to propose and confirm a liquidating plan of reorganization for the debtor. For six weeks after confirmation, over French Market's objection, the debtor continued to run the hotel pending its sale by French Market to a third party. P.C. Ltd. managed to amass well over $200,000 of unpaid administrative expenses in this brief interlude. On March 15, P.C. Ltd. filed a Rule to Show Cause in the bankruptcy court seeking to charge French Market with these expenses allegedly based on the plan of reorganization. After a non-evidentiary hearing, the bankruptcy court concluded that these post-confirmation expenses "benefitted" French Market and ordered the secured creditor, subject to auditing verification, to pay them all. French Market appealed unsuccessfully to the district court and now urges this court to reverse. It is plain to us that this case went off the track procedurally at its outset. The district court did not set it aright. To do so, we must vacate and remand to the bankruptcy court.

A brief elaboration on the facts and proceedings underlies our analysis. The bankruptcy court's heartfelt goal was to insure that administrative creditors of the confirmed debtor would be paid.[1] Neither the bankruptcy court nor French Market had timely become aware that P.C. Ltd. was paying its administrative debt 60 to 90 days in arrears, automatically portending that some creditors would be left in the lurch when ownership and management of the hotel changed hands. The bankruptcy court reasoned that because French Market, or a third party designated by it, intended to run the hotel at some point after confirmation, French Market inevitably benefitted by the hotel's being open rather than shuttered during the interim. Further, the bankruptcy court considered post-confirmation "administrative" creditors to fall within the terms of French Market's plan, which provided for the payment of administrative expenses in cash in full.

On appeal to the district court, French Market convinced the judge that despite its status as the liquidating plan proponent, nothing in the plan required it to guarantee the payment of post-confirmation expenses. 110 B.R. 232. The plan provided for payment of administrative expenses only from the hotel's operating income. French Market argued further that as a secured creditor, it could not be saddled with administrative expenses of the debtor except pursuant to 11 U.S.C. § 506(c), which provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such prop-

---

1. Both parties assume that creditors of P.C. Ltd. whose debts arise post-confirmation but before French Market's sale of the hotel are entitled to be treated as holders of administrative claims pursuant to 11 U.S.C. § 503(b). We, too, assume without deciding that this is a correct proposition. We note, however, that such expenses would not seem to be "reasonable" or "necessary" to "preserve" the bankruptcy estate *after confirmation* unless special factors, such as interim operation pending a sale, were specifically contemplated by the plan.

erty to the extent of any benefit to the holder of such claim.

The district court seized on a broad interpretation of § 506(c), decided that the plan contemplated sale of the hotel as a going concern, and concluded *ipso facto* that its continued operation "benefitted" French Market. Again, no evidence was taken either on the necessity of the hotel's continued operation or the reasonableness of over $200,000 in post-confirmation operating expenses.

Curiously, while both the bankruptcy and district courts assumed that French Market's best interest lay in the continued operation of the hotel, none of the documents in the record before us supports that assumption. Neither the plan of reorganization, the disclosure statement, the order of confirmation, nor the agreement of sale with French Market's purchaser required that the hotel be open for business at the date of French Market's sale. The plan, on the contrary, described itself as a "liquidation plan." That the hotel might remain open is a possibility contemplated by the sales agreement's provision for proration of expenses and revenues at the date of closing, but there is no written covenant or requirement of that result. French Market accordingly contends that the post-confirmation operating expenses could not properly be charged against it under § 506(c), because the terms of its plan and sale did not require continued operation of the hotel.

We are not able to resolve the parties' dispute on the current state of the record. P.C. Ltd. originally pled its claim wrong, asserting only that French Market was required under the plan to reimburse post-confirmation administrative creditors. However, the parties now frame the issue as whether French Market, the major secured creditor of the debtor's only significant asset, could be charged with administrative expenses. This question is addressed in § 506(c) of the Bankruptcy Code, construed by a recent decision of our court. 11 U.S.C. § 506(c); *In re Delta Towers, Ltd.*, 924 F.2d 74 (5th Cir.1991).

*Delta Towers* acknowledged that administrative expenses ordinarily must be satisfied out of the bankruptcy estate. *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982). To invoke the extraordinary exception to that rule contained in § 506(c), three elements must be shown: (1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses. *Delta Towers*, 924 F.2d at 76. The burden of demonstrating these elements is on the parties seeking recovery. Finally, adopting a "narrow" interpretation of § 506(c), *Delta Towers* held that the benefit element requires "that the claimant incurred the expenses primarily for the benefit of the secured creditor and that the expenses resulted in a quantifiable direct benefit to the secured creditor." 924 F.2d at 77 (citing *In re Cascade Hydraulics & Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987)). In *Delta Towers*, the court concluded that electrical service for an office building whose owners had filed bankruptcy could not be charged against the lienholder of the building, because the lienholder had no interest in its continued operation and never requested or consented to the provision of utility services. The court distinguished cases in which the bankruptcy assets had a higher value to the lienholder as a going concern. Significantly, *Delta Towers* emphasizes the importance of particularized fact findings by the bankruptcy court if it imposes costs pursuant to § 506(c).

The obvious lesson of *Delta Towers* is that this case must be remanded to the bankruptcy court. French Market and P.C. Ltd. vigorously dispute whether the hotel's continued operation was contemplated or necessary to French Market's reorganization or resale plans. Neither court below took evidence on this issue, nor did the courts parse the expenses incurred by P.C. Ltd. for their reasonableness or necessity. This latter failure may be attributed to the apparent inability of P.C. Ltd. to generate reliable or timely accounts for the hotel. Finally, the lower courts construed the potential extent of benefit to French Market too broadly in comparison with the § 506(c) standard clearly enunciated by *Delta Tow-*

*ers.* On remand, in the context of an adversary proceeding, these issues should be thoroughly considered. We express no merit on their ultimate resolution.[2]

A final cautionary note is in order. We understand the bankruptcy court's concern that administrative creditors were shortchanged by the debtor, contrary to their first-priority status in 11 U.S.C. § 507(a). In a reorganization, it is essential that the debtor keep his post-bankruptcy accounts paid, so that tradesmen will have an incentive to deal with the company in Chapter 11. If this goal is not reached, in many cases Chapter 11 debtors will find it increasingly difficult to maintain operations and to reorganize as going concerns, and the purpose of Chapter 11 would be seriously undermined. It is equally clear, however, that § 506(c) was not intended as a panacea for this problem. The benefits of § 506(c) to administrative creditors are severely limited. What is required is constant vigilance by the bankruptcy court, the U.S. trustee and creditors to insure that the debtor files operating reports that accurately depict its financial condition and enable a swift remedy if the debtor is unable to continue paying administrative debts. In this case, for instance, P.C. Ltd. had not filed operating reports for months prior to confirmation, and French Market Homestead was forced to rely, erroneously as it turned out, on oral representations that operating expenses were being kept current.

For the foregoing reasons, the judgments of the bankruptcy and district courts are REVERSED, and the case is REMANDED for further proceedings.

2. We also leave for resolution in the bankruptcy court French Market's claim for reimbursement of taxes incurred by the hotel during Chapter 11 but paid by the secured creditor.