**In the Matter of SPECIALCARE, INC., Debtor.**

**Harry W. PETTIGREW, in his Office and Capacity as Trustee–in–Bankruptcy of the Estate of SpecialCare, Inc., Plaintiff,**

v.

**CONSULTANTS UNITED, INC., United States of America, and DeKalb County, Georgia, Defendants.**

**Bankruptcy No. A94–63140–WHD. Adversary No. 96–6108A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 30, 1997.

Harry W. Pettigrew, Pettigrew & Trippe, P.C., Atlanta, GA, Trustee.

Michael N. Wilcove, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S. I.R.S.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in these proceedings is the Motion for Summary Judgment of Harry W. Pettigrew (hereinafter "the Trustee"), and the Cross–Motion for Summary Judgment filed by the United States of America regarding claims of the Internal Revenue Service (hereinafter "the IRS"). Both motions arise from an adversary proceeding brought by the Trustee for the estate of SpecialCare, Inc. (hereinafter "the Debtor") against the above-named Defendants to determine the priority, extent, validity, and subordination of liens. The matters involved herein constitute a core proceeding, see 28 U.S.C. § 157(b)(2)(F), of which the Court will dispose in accordance with the Findings of Fact and Conclusions of Law presented below.

### FINDINGS OF FACT

Prior to filing bankruptcy, the Debtor operated as a day care facility in DeKalb County for children with severe mental or physical disabilities. The physical facility, although not owned by the Debtor, was specially designed for the care of these children. On March 3, 1994, the Debtor commenced a voluntary Chapter 11 case. Defendant Consultants United, Inc., (hereinafter "CUI") filed a proof of claim (# 60), asserting secured status in accounts receivable and a debt owing of $104,166.00. The UCC–1, attached to the CUI proof of claim, shows that it was filed of record in DeKalb County by CUI on May 24, 1991, listing the Debtor as "Davidson Therapeutic Services, Inc." (T.'s Mot. S.J., Ex. B, Att. I.) On June 26, 1991, Davidson Therapeutic Services, Inc. formally changed its corporate name to "SpecialCare, Inc." (T.'s Mot. S.J., Ex. C, Att. I.) CUI never filed an amendment to reflect the name change of the Debtor.

On November 30, 1994, the IRS filed a proof of claim (# 40), asserting a $56,311.13 tax lien in accounts receivable. As of the petition date, the asserted lien consisted of $35,231.56 in taxes, $14,595.74 in penalties, and $6,483.83 in interest. Pursuant to an order entered April 20, 1994, CUI and the IRS were granted security interests in postpetition accounts receivable to the same extent and with the same priority as they had as of the commencement of the case.

On July 20, 1994, Harry W. Pettigrew was appointed the Chapter 11 Trustee. At that time there was no traditional business or financial management in place. The reconciled bank balances were negative (−$11,080.31), and there was insufficient cash flow to pay payroll and payroll taxes. The Trustee recognized that there was an extremely small likelihood that general unsecured creditors could benefit in the traditional sense by the administration of the case in bankruptcy. Had the business served other than special-needs children, the Trustee would have closed the facility immediately. However, recognizing the special nature of the Debtor's business, the Trustee sought to administer the case to allow the business to continue in a form that could serve the same general population of special-needs children, as well as to collect the accounts receivable. To accomplish these goals, the Trustee had to put in place traditional business and financial management and reconstruct historical business and financial records.

The Trustee filed an Emergency Motion To Incur Debt, To Sell, To Assume or Reject Lease, To Convert to Chapter 7 and Operate and Shorten Time, which was granted over CUI's objection. The case was converted to a Chapter 7 and an asset sale was consummated, with the purchaser assuming certain obligations with respect to continued operation of the facility, but not paying any cash. The Trustee obtained orders which allowed the winding down of the pre-sale business, including the current payment of certain administrative expenses.

The aggregate of the accounts receivable collected postpetition (during the Chapter 11 and the Chapter 7) totals $318,479.71. $143,783.64 of these accounts receivable were created postpetition, and the remaining $174,696.07 were created prepetition. None of the accounts receivable collected postpetition are based on accounts receivable that came into existence prior to or within four months after June 26, 1991, the date the Debtor formally changed its corporate name from "Davidson

Therapeutic Services, Inc." to "SpecialCare, Inc."

The Trustee now holds the sum of $82,-816.89 from the collection of accounts, plus postpetition interest thereon. The particular costs of the Trustee and the Trustee's professionals in reconstructing the books and records of the Debtor and collecting the accounts receivable amounted to $25,615.29. The claims of DeKalb County, Georgia have been paid in full. .

The Trustee has brought the instant adversary proceeding, seeking the following:

(1) to dispense with the claim of DeKalb County, Georgia;

(2) to classify the claim of Consultants United, Inc. as unsecured;

(3) to avoid the $14,595.74 in IRS tax penalty pursuant to 11 U.S.C. § 724(a), preserving that amount for the estate under 11 U.S.C. § 551, and to permit payment of $41,-715.39 in administrative expenses under 11 U.S.C. § 724(b)[1] and $25,615.29 in administrative expenses pursuant to 11 U.S.C. § 506(c).[2]

Defendant DeKalb County, Georgia, has not responded to the Trustee's motion for summary judgment. Defendant CUI responded with a Motion to Extend Time to Respond to Plaintiff's Motion for Summary Judgment, which was granted. Notwithstanding this extension, however, Defendant CUI has failed to respond to the Trustee's motion.

Defendant United States of America, for the IRS, filed a response and brought a cross-motion for summary judgment. The IRS concedes the avoidance of the penalty portion of its tax lien and the payment of $41,715.39 in administrative expenses pursuant to 11 U.S.C. § 724(b), but argues that the Trustee should not be allowed to surcharge against it an additional $25,615.29 beyond that amount. The I.R.S. further argues that, even if the Trustee is allowed to use section

506(c) in such a manner, the $25,615.29 surcharge would not meet the requirements of that section. Specifically, since section 506(c) allows recovery by the Trustee only "to the extent of any benefit to the holder of such claim," the IRS contends that expenses providing only incidental benefits to a secured creditor, like those claimed by the Trustee here, may not form the basis for an award under that section.

## CONCLUSIONS OF LAW

In accordance with Federal Rule of Civil Procedure 56 (applicable in bankruptcy under Fed.R.Bank.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Furthermore, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of establishing the right of summary judgment, *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982), and the Court will read the opposing party's pleadings liberally. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), *Rosen v. Biscayne Yacht and Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24,

---

**1.** Under section 724(b), administrative and priority expenses of section 507(a)(1) through (a)(7) are to be paid from the amount that would have been paid on an unavoidable tax lien, with the payment of the tax lien deferred. *See* 11 U.S.C. § 724(b).

**2.** Section 506(c) allows the Trustee to recover from property securing an allowed secured claim the reasonable and necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. *See* 11 U.S.C. § 506(c).

106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* FED.R.CIV.P. 56(e).

Additionally, the pertinent local rules for the Northern District of Georgia, also applicable to bankruptcy proceedings, act to give notice to the parties that a motion will be ready for determination on the merits twenty days from the date of service of the motion. LR 220–1(b)(1) (N.D.Ga.) (applicable to bankruptcy proceedings pursuant to BLR 705–2 (N.D.Ga.)); *see Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir.1988). If no response or other opposition is filed, the Court will deem the facts as set forth in the movant's pleadings admitted. *Kelly v. United States*, 924 F.2d 355 (1st Cir.1991); *Louisiana Hydrolec*, 854 F.2d at 1545; *Ellenberg v. Mercer (In re Home Co.)*, 108 B.R. 357 (Bankr.N.D.Ga.1989) (Cotton, B.J.). Finally, the Court will examine the record to determine whether the movant's motion and supporting pleadings provide a sufficient legal basis which would entitle the movant to judgment. *Dunlap*, 858 F.2d at 632; *Kelly*, 924 F.2d at 358. If the movant has set forth a sufficient legal basis, judgment is proper. *Id.*

### I. Claim of DeKalb County, Georgia

After the complaint was filed, it was determined that all the claims of DeKalb County had been paid in full. (Aff. of Harry W. Pettigrew ¶ 30). Therefore, DeKalb County has no claims in this case, and the Trustee's Motion shall be granted to the extent that it seeks such a determination from the Court.

### II. Claim of Consultants United, Inc.

O.C.G.A. § 11–9–402(7) governs the effectiveness of CUI's UCC–1 financing statement to continue perfection of its security interest in accounts receivable after the Debtor changed its name. Section 11–9–402(7) provides as follows:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor, whether or not it adds other trade names or the names of partners …

*Where the debtor so changes his name, or in the case of an organization, its name, identity, or corporate structure. that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time.*

O.C.G.A. § 11–9–402(7) (emphasis added).

On the facts of this case, CUI's financing statement, asserting a security interest in the Debtor's accounts receivable, is seriously misleading as a matter of law. Because the two names are completely dissimilar, a searcher of SpecialCare's interests would not be alerted to inquire into those of Davidson Therapeutic Services. *In re Cohutta Mills*, 108 B.R. 815 (N.D.Ga.1989); *see also In re Firth*, 363 F.Supp. 369 (M.D.Ga. 1973). CUI never filed an amended UCC–1 reflecting the Debtor's name change, so its filing is not effective to perfect a security interest in collateral acquired by the Debtor more than four months after it changed its name to SpecialCare, Inc. (Aff.HWP, ¶ 14). None of the accounts receivable collected by the Trustee were based on accounts receivable that came into existence prior to or within four months after the June 26, 1991 name change. (Aff.HWP, ¶ 30). Therefore, CUI's UCC–1 financing statement is insufficient to perfect its security interest in any of the accounts receivable collected by the Trustee. As a lien creditor as of the date of the bankruptcy filing, the Trustee holds a claim to the proceeds of the accounts receivable superior to that of CUI. 11 U.S.C. § 544(a). CUI is entitled to a distribution, if any, as a general unsecured creditor.

### III. Claim of the IRS

The Trustee holds $82,816.89 in proceeds of accounts receivable, plus postpetition interest. There remains $69,563.12 in unpaid administrative expenses. The IRS has a first position in the form of a perfected security interest in the Debtor's accounts receivable for $56,311.13. This secured claim consists of $35,231.56 in taxes, $14,595.74 in penalties, and $6,483.83 in interest.

## A. Effect of Section 724(a)

The Trustee seeks to avoid the secured claim for penalties under 11 U.S.C. § 724(a), which provides that "the trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." 11 U.S.C. § 724(a). Section 726(a)(4) includes "any allowed claim, whether secured or unsecured, for any fine, *penalty,* or forfeiture." 11 U.S.C. § 726(a)(4) (emphasis added). The IRS does not dispute that the $14,595.74 penalty claim may be avoided. After the avoidance of the penalty lien, the allowable amount of the IRS claim is $41,715.36.

## B. Effect of Section 724(b)

The Trustee seeks to recover a portion of the unpaid administrative expenses in the amount of $41,715.36, the remainder of the IRS's secured claim, pursuant to 11 U.S.C. § 724(b). The applicable portions of section 724(b) provide as follows:

> Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
>
> \*  \*  \*  \*  \*  \*
>
> (2) second, to any holder of a claim of a kind specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6), or 507(a)(7) of this title, *to the extent of the amount of such allowed tax claim that is secured by such tax lien;*
>
> (3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
>
> \*  \*  \*  \*  \*  \*
>
> (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim

**3.** United Medicorp (UMC) was the collection agent of the Debtor for accounts receivable of third-party insurance account debtors. UMC received a commission of 7% of any funds it collected, deducting that commission prior to paying the remaining funds over to the Trustee. The

secured by such tax lien is not paid under paragraph (3) of this subsection;

\*  \*  \*  \*  \*  \*

11 U.S.C. § 724(b) (emphasis added).

Under section 724(b), administrative and priority expenses of section 507(a)(1) through (a)(7) are to be paid from the amount that would have been paid on an unavoidable tax lien, with payment of the tax lien deferred. In other words, unlike section 724(a), which reduces the amount of the IRS's claim, section 724(b) simply defers payment to the IRS until administrative expenses have been paid. The IRS still holds a claim in the amount of $41,715.39. Pursuant to section 724(b)(2), however, that $41,715.39 right to payment shall be subordinated in priority to certain administrative expenses. The IRS has no objection to the payment of administrative expenses in such a fashion.

## C. Effect of Section 506(c)

After the avoidance of the penalty lien pursuant to section 724(a) and the payment of administrative expenses pursuant to section 724(b), the Trustee holds $26,505.76 in accounts receivable. [$82,816.89 − $14,595.74 avoided penalty lien − $41,715.39 in displaced tax lien = $26,505.76] Without more, the IRS would be entitled to a distribution of this entire amount. However, the Trustee seeks to recover an additional $25,615.29 in administrative expenses as reasonable and necessary costs of preserving the IRS's collateral, the accounts receivable. 11 U.S.C. § 506(c) provides that "the trustee may recover from property securing an allowed secured claim the *reasonable, necessary* costs and expenses of preserving, or disposing of, such property *to the extent of any benefit to the holder of such claim.*" 11 U.S.C. § 506(c) (emphasis added). The Trustee seeks to surcharge the IRS for the following administrative expenses:

| | | |
|---|---|---|
| (1) | United Medicorp, Inc. commission: [3] | $ 2,763.15, prepaid by the Trustee |
| (2) | Peery Moran commission: [4] | $ 2,143.74, prepaid by the Trustee |
| (3) | CPA for Chapter 11 Trustee fees: | $ 864.00, unpaid allowed |
| (4) | CPA for Chapter 7 Trustee fees: | $19,844.40, unpaid allowed |

Trustee received $36,710.46 from UMC after UMC deducted its commissions. The 7% commissions then were approximately $2,763.15.

**4.** Peery Moran was a college student who had worked part time for the Debtor and was contin-

■ To recover these expenses, the Trustee must show that they meet all the requirements of section 506(c): that they were reasonable and necessary, and that they benefited the IRS. *Daniel v. AMCI, Inc. (In re Ferncrest Ct. Partners, Ltd.),* 66 F.3d 778, 781 (6th Cir.1995) ("As a general rule, in order to prevail on a section 506(c) claim, the claimant bears the burden of proving that the costs were reasonable, necessary, and a benefit to the secured party"); *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73 (2d Cir.1984); *French Mkt. Homestead v. P.C. Ltd. (In re P.C. Ltd.),* 929 F.2d 203, 205 (5th Cir.1991).

### (1) The CPA Fees

■ The unpaid fees of the CPA for the Chapter 11 and the Chapter 7 do not satisfy the "benefit" prong of the section 506(c) test. Accounting fees incurred in the process of reconstructing the debtor's business records are a part of the Trustee's responsibility as the liquidator of the estate; the fact that the accounting benefited the IRS in some way is merely incidental. As noted by the Third Circuit, "[t]o warrant 506(c) recovery, [the trustee] must show that . . . the funds were expended *primarily* for the benefit of the creditor and that the creditor directly benefited from the expenditure . . . section 506(c) was not intended to encompass ordinary administrative expenses that are attributable to the general operation and dissolution of an estate in bankruptcy. Rather, it was designed to extract from a particular asset the cost of preserving or disposing of that asset." *United Jersey Bank v. Miller (In re C.S. Assocs.),* 29 F.3d 903, 906–907 (3d Cir.1994).

It is true that the IRS benefited from the expenditure of accounting fees in the sense that, to collect the accounts receivable, it was necessary to reconstruct the Debtor's business records. However, this benefit is indirect and incidental. The CPA's fees were incurred not primarily for the benefit of the IRS, but through the Trustee's performance of his duties as administrator of the estate. Where the benefit to a secured creditor is indefinite and remote, no recovery is permitted under section 506(c).[5] The Trustee cannot recover the $20,708.40 in CPA fees under section 506(c).

### (2) The Collection Agency Commission and Peery Moran Compensation

■ The commission paid to UMC, the collection agent for accounts receivable of third-party insurance account debtors, and the salary of Peery Moran, a college student employed for the sole purpose of determining insurance claims for the collection of accounts receivable, are precisely the kind of claims contemplated by section 506(c). The IRS has not argued that these particular expenses were not reasonable or necessary for the recovery of accounts receivable, and these expenses are sufficiently directly related to the collection of the IRS's collateral to satisfy section 506(c)'s requirement that the secured creditor benefit from the expense. Collier notes that "such costs and expenses as . . . payroll of employees directly and solely involved with the disposition of the subject property . . . would generally be found to relate to preservation or disposition and benefit the holder of the secured claim." 4 COLLIER ON BANKRUPTCY, ¶ 506.04[1][a] (15th rev. ed.1996). Collection agency commission

---

ued by the Trustee solely to analyze and process insurance claims to facilitate collection of accounts receivable.

5. *United Jersey Bank,* 29 F.3d at 907–908; *Treasurer of Snohomish County v. Seattle–First National Bank (In re Glasply Marine Indus., Inc.)* 971 F.2d 391, 394 (9th Cir.1992).

Collier notes that, where the holder of a secured claim has sought the appointment of a chapter 11 trustee or conversion of the case to a

chapter 7, "courts are likely to find that the holder has impliedly consented to recovery by the trustee of a wider range of costs and expenses than would normally be allowable under section 506(c)." 4 COLLIER ON BANKRUPTCY, ¶ 506.04[3][a] (15th rev. ed.1996). In the instant case, however, the IRS did not request appointment of the Trustee in the chapter 11. The conversion to chapter 7 was made by emergency motion of the Trustee. (T.'s Mot. S.J., Ex. G, Att. I).

and payroll for persons employed for the sole purpose of collecting the accounts receivable fit clearly within Collier's category of section 506(c) expenses.

In its original response, the IRS argued that while section 724(b) permits administrative expenses to be paid from funds encumbered by a tax lien up to the amount of the claim secured by the lien, once that ceiling (the amount of the tax lien) is hit, the Trustee may not force the secured creditor to fund the operations of the estate by using section 506(c). The IRS conceded in its second brief that it does not go so far as to assert that a section 506(c) surcharge may *never* be asserted against the United States where property of a bankruptcy estate is being distributed pursuant to section 724(b), but it maintained that general administrative expenses like the ones claimed by the Trustee are not subject to a section 506(c) surcharge. The IRS is correct on this latter point with respect to the CPA fees, but, as discussed above, the collection agency commission and the payroll for Peery Moran are the kind of reasonable and necessary expenses that directly benefit the IRS and are recoverable under section 506(c).

The IRS is entitled to a distribution of $21,598.97. [$82,816.89 − $14,595.74 avoided penalty lien − $41,715.39 in displaced tax lien − $4,906.89 506(c) surcharge = $21,598.87]

## CONCLUSION

There is no dispute as to any material fact submitted by the Trustee. DeKalb County, Georgia is not entitled to a distribution because its claims have been paid in full. Consultants United, Inc. is entitled to a distribution, if any, as a general unsecured creditor, because its UCC–1 was ineffective to perfect its security interest. The $14,595.74 in IRS tax penalty is avoided under 11 U.S.C. § 724(a) and preserved for the benefit of the estate. Administrative expenses are paid from the next $41,715.39 in IRS tax lien, pursuant to 11 U.S.C. § 724(b). $4,906.89, the reasonable and necessary costs of collecting the IRS's collateral, are surcharged to the

remainder of the IRS's lien, pursuant to 11 U.S.C. § 506(c). The remaining accounts receivable on hand, $21,598.87, are distributed to the IRS as the holder of a secured claim in the amount of $36,808.50. [$56,311.13 − $14,595.74 avoided tax penalty − $4,906.89 506(c) surcharge]

As such, it is hereby **ORDERED** that the Trustee's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** while the United States' Cross Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**