HAMILTON, Circuit Judge,
concurring in part and dissenting in part:
My two-fold disagreement with Judge Er-vin’s lead opinion concerns only Part IV of his opinion. First, I cannot agree with his conclusion in Part IV.A that 11 U.S.C. § 506(e) authorizes the bankruptcy trustee to surcharge a secured creditor for an administrative expense only if there has been an “actual expenditure” made. Second, I cannot agree with Judge Ervin’s conclusion in Part IV.B that the district court failed to make adequate findings that Ford.Motor Credit Company (Ford Credit) incurred a direct and quantifiable benefit through the unpaid rental expenses. Accordingly, I concur in Parts I, II, and III of Judge Ervin’s lead opinion and dissent from Part IV.B.*
I.
In Part IV.A of his opinion, Judge Ervin concludes that the bankruptcy court erred as a matter of law in holding that § 506(c) does not require an actual expenditure in order for the estate to be reimbursed. Since it is undisputed that K & L Lakeland (K & L) did not actually pay the rental expenses the Trustee seeks from Ford Credit under *212 § 506(c), Judge Ervin holds that Ford Credit may not be surcharged for those expenses.
I believe that Judge Ervin’s analysis is flawed for several reasons. First, in concluding that § 506(e) requires an actual expenditure, Judge Ervin relies primarily on the “expense” or “expenditure” language contained in § 506(c) and numerous decisions interpreting § 506(c). Judge Ervin’s sole focus on the word “expense,” however, ignores the fact that § 506(c) also permits the recovery of “reasonable, necessary costs." See 11 U.S.C. § 506(c) (“The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses ....”) (emphasis added). A “cost” is defined as “the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered” and as “an item of outlay incurred in the operation of a business enterprise.” WEBSTER’S THIRD NEW INTERNATIONAL DICTIONARY 515 (1981) (emphasis added); see also Russello v. United States, 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (where statutory term is not defined, “[t]his silence compels us to ‘start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.’ ” (quoting Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962))). Thus, by its plain language, § 506(c) permits the bankruptcy trustee to recover costs that have not actually been paid, but rather have accrued in order to preserve or dispose of secured assets.
Second, Judge Ervin’s reliance on the “expenditure” or “expense” language used by courts in various decisions is misplaced in light of the fact almost none of these courts actually addressed whether § 506(c) requires an actual expenditure or, alternatively, whether the incurrence of a cost or the extension of credit suffices for recovery under § 506(e). See, e.g., In re Visual Indus., Inc., 57 F.3d 321, 324-26 (3d Cir.1995); In re Senior-G & A Operating Co., Inc., 957 F.2d 1290, 1298-1300 (5th Cir.1992). Instead, these courts merely refer to an “expense” or “expenditure” in the context of a general discussion about the requirements of § 506(c). In addition, the only other circuit court of appeals to consider the issue, the Eighth Circuit, has rejected the argument that because a debt was merely incurred, rather than an expenditure paid, § 506(c) does not permit the secured creditor to be surcharged. See IRS v. Boatmen’s First Nat’l Bank, 5 F.3d 1157, 1160 (8th Cir.1993) (holding that unpaid payroll taxes could be surcharged to secured creditor even though no funds were advanced to the debtor-in-possession or to the bankruptcy trustee).
Finally, the most significant problem with Judge Ervin’s conclusion in Part IV.A of his opinion is that his analysis and resulting conclusion undermine the central purpose of § 506(c), which is to prevent a secured creditor from gaining a windfall at the expense of the estate. See In re JKJ Chevrolet, Inc., 26 F.3d 481, 483 (4th Cir.1994). .Under Judge Ervin’s reasoning, even where a secured creditor implicitly consents to the continued operation of a business by entering into post-petition cash collateral agreements, as long as no cash changes hands, the cost’incurred cannot be surcharged to the- secured creditor, regardless of the extent of the benefit to the secured creditor. Such a conclusion not only is based on an artificial distinction between an expenditure that has actually been paid and a debt that has been merely incurred, but also permits the very windfall § 506(e) was designed to prevent.
For these reasons, I would hold that § 506(c) does not require an actual cash expenditure, but rather permits the bankrupt estate to recover administrative expenses where a debt merely has been incurred, as long as the other requirements of § 506(c) are satisfied. A contrary interpretation is not supported by either the text of § 506(c) or the case law interpreting that text and would defeat the purpose of § 506(c) by permitting a secured creditor to reap a direct benefit without reimbursing the bankrupt estate.
II.
In Part IV.B of Judge Ervin’s opinion, which is joined by Senior Judge Phillips, Judge Ervin concludes that the bankruptcy court in this case also erred when it failed to *213 make affirmative findings concerning the requirements of § 506(c) before permitting the Trustee to surcharge Ford Credit for the unpaid rental expense. I respectfully disagree.
In order to invoke § 506(c), the claimant must show: (1) the expenditure was necessary; (2) the amounts expended were reasonable; and (3) the expenditure conferred a direct benefit on the secured creditor. See In re Visual Indus., 57 F.3d at 325; In re P.C., Ltd., 929 F.2d 203, 205 (5th Cir.1991). In this case, although the bankruptcy court’s articulation of its findings may not be a model of clarity, the bankruptcy court clearly found that Ford Credit directly benefitted from the continued operation of K & L because it was able to liquidate both new vehicles and parts that otherwise would have been sold at a reduced price.
This finding is supported by the record. The evidence before the bankruptcy court indicated that at the time K & L filed its bankruptcy petition, it was approximately $170,000 “out of trust” on its floor-plan financing with Ford Credit. By enabling K & L to continue its operations as an automobile dealership, Ford Credit was able to recoup all of those funds, and sixty-five new vehicles were sold by K & L postpetition. Thus, Ford Credit was able to liquidate some of its collateral and avoid having to sell that collateral at a lower price because K & L had gone out of business. With regard to the requirement that the amounts expended be “reasonable,” the bankruptcy court heard evidence as to the reasonable rental rate of the property on which K & L operated and concluded that a reasonable rate was $40,000 per month based on that testimony. The amount allowed by the bankruptcy court was determined by its assessment of what constituted a “reasonable amount” expended under the circumstances. Finally, regarding the requirement that the expenditure be necessary, the bankruptcy court recognized that the amount surcharged to the administrative creditor had to be both reasonable and necessary, and implicitly found that the $40,000 monthly rental expense was both reasonable and necessary. In addition, it would be illogical to suggest that the use of the physical property on which the business was located was not a necessary expense to the continued operation of the dealership.
In sum, the bankruptcy court noted each requirement of § 506(e), considered the relevant evidence, and found that each requirement was satisfied. Because the record supports the bankruptcy court’s findings, I would affirm the district court’s order affirming the bankruptcy court’s order surcharging Ford Credit for the unpaid rental expenses incurred by K & L. Accordingly, I join in Parts I, II, and III of Judge Ervin’s lead opinion and dissent from Part IV.B.

 Because Part IV.A of Judge Ervin’s opinion did not gamer a majority, there is no need to dissent therefrom, and I merely note my disagreement as set forth below.