**In re AIR CENTER, INC., Debtor.**

**Bankruptcy No. 84-676-A.**

United States Bankruptcy Court, W.D. Oklahoma.

April 30, 1985.

Theodore Q. Eliot, Tulsa, Okl., for Federal Deposit Ins. Corp.

Jack High and Douglas B. Allen, Oklahoma City, Okl., for former employees of Air Center, Inc.

Jerome S. Sepkowitz, Oklahoma City, Okl., for Trustees of The Oklahoma City Airport Trust.

Larry D. Patton, Oklahoma City, Okl., movant, for Air Center, Inc.

DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

Motions made in this case concern whether a landlord, debtor's employees and its

counsel are entitled to recovery under section 506(c) of the Bankruptcy Code.

The debtor operated its business in facilities leased from an airport where it serviced and repaired aircraft.

It sought relief under Chapter 11 and an order subsequently was entered confirming a plan of reorganization. Under the plan a third party was obliged to provide funds to the reorganized entity for payment of claims in accordance with the plan. The third party proposed the plan jointly with the debtor and the only condition to his performance was a final order confirming the plan. Though the order was entered he did not perform and the plan was never consummated.

The Federal Deposit Insurance Corporation, as receiver for Penn Square Bank, N.A., subsequently repossessed and sold its collateral which constituted virtually all the debtor's assets. The amounts realized from the collateral are substantially less than the FDIC's claim.

The debtor's counsel has received no allowance for services and expenses during the administration of the estate; for more than two weeks, subsequent to the order of confirmation, the employees were unpaid; and the landlord's rents, also subsequent to the order of confirmation, are unpaid. These parties now seek approximately $400,000 under section 506(c) from the FDIC, contending that their services and use of their facilities resulted in benefits to it and are reasonable and necessary costs and expenses of preserving the collateral. The gist of their claims is that during the course of administration of the case, and through their efforts and facilities, accounts receivable, in which the FDIC held a security interest, increased in value to an extent exceeding their claims.

A threshold issue concerns whether these claimants have standing to seek recovery of costs and expenses of preservation of the collateral, assuming they are able to show the required facts. Section 506(c) states plainly that the trustee, which includes the debtor in possession under section 1107(a), may recover costs and expenses from the holder of a secured claim in an appropriate case. *In re S & S Industries, Inc.*, 30 B.R. 395 (Bankr.E.D.Mich. 1983) quotes from the legislative history as follows:

> Anytime the trustee or debtor in possession expends money to provide for the reasonable and necessary costs and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.

*Id.* at 398.

█ This statement clearly implies that the trustee may recover when he or she has spent money for the benefit of the holder of the secured claim. That is not the case here. While the former debtor in possession has joined in the motions it has not made any of the expenditures for which recovery is sought. "The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the costs of protecting what is not theirs." *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982). Here the unsecured claimants have nothing to protect for the value of the estate's property is substantially less than the amount of the FDIC's allowed secured claim. "Implicit in the basis for recovery is that the costs were paid by the estate and that the debtor in possession or the trustee, acting for the estate, is the proper party to seek a recovery under Code § 506(c)." *Codesco, supra,* at 230.

Since, therefore, there are no interests of the estate to protect in connection with preservation of the FDIC's collateral, for the debtor in possession has not paid out any of the estate's funds for that purpose, the motions must fail.

█ The FDIC also makes another argument which is persuasive. The confirmed plan provides that the joint proponent will

provide the funds necessary to pay all administrative and certain other claims. Section 1141 of the Bankruptcy Code makes it clear that confirmation binds the debtor, creditors and any entity acquiring property under the plan. Upon confirmation all property of the estate vests in the acquiring entity which then holds it free and clear of all preconfirmation claims subject to the terms and conditions of the confirmed plan. Following this analysis administrative claims for postconfirmation taxes have been denied on the grounds that they were not incurred by the estate. *In re Westholt Manufacturing, Inc.*, 20 B.R. 368, 6 C.B.C. 1068 (Bankr.D.Kan.1982) *aff'd* in *United States v. Redmond,* 36 B.R. 932 (D.D.Kan. 1984). The reasoning is that an order of confirmation is *res judicata* to all questions which could have been raised pertaining to it. 5 *Collier on Bankruptcy,* ¶ 1141.01[1].

It thus follows that upon confirmation the estate ceases to exist and it is the obligation of the reorganized entity to make the payments required by the plan. By the confirmed plan in this case the third party became obligated to pay to the reorganized entity sufficient funds to satisfy administrative and other claims. It is the default of this person which has caused movants' loss and it appears their recourse is against him and the reorganized entity, under the confirmed plan, not against the FDIC.

Accordingly the motions are denied.