815 F.2d 546
 16 Collier Bankr.Cas.2d 1509, Bankr. L. Rep. P 71,795
In re CASCADE HYDRAULICS AND UTILITY SERVICE, INC.
CENTRAL BANK OF MONTANA, a Montana banking corporation,
Respondent-Appellant.
v.
CASCADE HYDRAULICS AND UTILITY SERVICE, INC., Debtor-Appellee.
 No. 86-3968.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 7, 1987.*
Decided April 20, 1987.
 
 Ward E. Taleff, Great Falls, Mont., for respondent-appellant.
 Gregory H. Warner, Great Falls, Mont., for debtor-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before BROWNING, WRIGHT and HALL, Circuit Judges.
 EUGENE A. WRIGHT, Senior Circuit Judge:
 
 
 1
 Central Bank of Montana appeals a district court decision allowing payment of administrative expenses from the sale of Central's secured collateral. The district court affirmed the bankruptcy court's award of the expenses. We reverse.
 
 BACKGROUND
 
 2
 Prior to filing its chapter 11 bankruptcy, Cascade Hydraulics and Utility Services, Inc. executed a credit agreement with Central Bank for an on-going line of credit. The agreement was secured by Cascade's goods, merchandise, and inventory.
 
 
 3
 When Cascade filed its bankruptcy petition, the bank moved for relief from the stay and an order prohibiting use of its cash collateral. While the motion was pending, the bank stipulated to the use of its cash collateral to pay limited administrative expenses. The judge denied the bank's motion for relief from the stay, but ordered payments to protect it adequately.
 
 
 4
 Cascade filed its plan for reorganization five months later. Before it was approved, however, Cascade experienced financial difficulties. It then amended its plan with court approval to liquidate its assets at sale.
 
 
 5
 After the sale, the bankruptcy court ordered the payment of administrative expenses from the proceeds. The administrative expenses allowed included $1,512.68 for telephone expenses, $9,690.48 for federal withholding taxes, $8,359.15 for social security taxes, $6,752.67 for attorney fees and $1,750.00 for the president of Cascade. On appeal, the district court affirmed.DISCUSSION
 
 
 6
 Central contends that the two courts erred in awarding payment of administrative expenses from the sale of its secured collateral.[1] We agree.
 
 
 7
 Cascade argues that the deduction of administrative expenses was correct. It contends that the bank benefited from the operation of its business, warranting an award of administrative expenses. We disagree.
 
 
 8
 Generally, a debtor's bankruptcy assets are subject to all liens and encumbrances existing when the petition is filed. 3 Collier on Bankruptcy p 507.02(2) (15th ed. 1979). These encumbrances are usually satisfied before disbursement to unsecured creditors. See generally, 3 Collier on Bankruptcy p 507.02(2). Administrative expenses or the general costs of reorganization may not generally be charged against secured collateral. First Western Savings & Loan Association v. Anderson, 252 F.2d 544, 547 (9th Cir.1958). We allow payment of administrative expenses from the proceeds of secured collateral when incurred primarily for the benefit of the secured creditor or when the secured creditor caused or consented to the expense. Id; In the Matter of Trim-X, Inc., 695 F.2d 296, 301 (7th Cir.1982).
 
 
 9
 Congress codified this equitable exception in 11 U.S.C. Sec. 506(c) (1982). See S.Rep. No. 989, 95th Cong., 2d Sess. 68, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5854; H.R.Rep. No. 595, 95th Cong. 1st Sess. 357, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6313 (subsection (c) codifies current law). Section 506(c) now allows "[t]he trustee [to] recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." Under this provision, Cascade must demonstrate that the expenses were (1) reasonable, (2) necessary, and (3) beneficial to Central to recover. Sec. 506(c).
 
 
 10
 In reviewing the record, we find nothing to indicate that the district and bankruptcy courts considered the reasonableness and necessity of Cascade's expenses. It appears that they assumed these elements were satisfied. Even if we assume the satisfaction of the two elements, we conclude that the third element, benefit, has not been satisfied.
 
 
 11
 To satisfy the benefit test of section 506(c), Cascade must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral. Brookfield Production Credit Association v. Borron, 738 F.2d 951, 952 (8th Cir.1984); In re Proto-Specialties, Inc., 43 B.R. 81, 83 (Bankr.D.Ariz.1984); see In re Sonoma V, 24 B.R. 600, 603 (9th Cir. BAP 1982). Cascade's recovery, however, is limited to the extent that the secured creditor benefited from the services. Sonoma V, 24 B.R. at 603. Section 506(c) is not intended as a substitute for the recovery of administrative expenses normally the responsibility of the debtor's estate. Brookfield, 738 F.2d at 953; In re Flagstaff Foodservice Corp., 739 F.2d 73, 76 (2nd Cir.1984); Trim-X, 695 F.2d at 301; Proto-Specialties, 43 B.R. at 83.
 
 
 12
 Cascade makes general assertions that the bank benefited from the operation of its business. A debtor does not satisfy her burden of proof by suggesting hypothetical benefits. In re Flagstaff Foodservice Corp., 762 F.2d 10, 12 (2d Cir.1985). One such general assertion is that Central Bank benefited from the adequate protection payments. We decline to give such a broad interpretation to the meaning of benefit.
 
 
 13
 Mere cooperation with the debtor does not make the secured creditor liable for all expenses of administration. Flagstaff Foodservice Corp., 739 F.2d at 77. To shift liability to the secured creditor would make " 'it difficult, if not impossible, to induce new lenders to finance a chapter 11 operation.' " Id. (citing In re S & S Industries, Inc., 30 B.R. 395, 398 (Bankr.E.D.Mich.1983)). It would discourage the trustee or debtor in possession from taking reasonable steps to expedite the reorganization and encourage negligence. See id.; Trim-X, 695 F.2d at 301.
 
 
 14
 Cascade also argues that the bank benefited from the ordering of inventory not in stock and the bi-monthly statements submitted to it. Cascade, however, does not explain how these two alleged benefits helped dispose of or preserve the value of the collateral. These are incidental benefits at most that do not fall within the scope of section 506(c). See Flagstaff Foodservice Corp., 739 F.2d at 76.
 
 
 15
 Cascade argues further that the bank consented to the deduction of administrative expenses by consenting to the payment of earlier operating expenses. A secured creditor's consent to the payment of designated expenses, limited in amount, is not a blanket consent to be charged with additional expenses not included in the consent agreement. Flagstaff Foodservice Corp., 762 F.2d at 12. Here, Central agreed to pay specific items limited in amount. Its limited authorization was not a blanket consent, nor implied consent, to be charged with Cascade's cost of doing business. Implied consent is generally limited to instances in which the creditor caused the additional expense. Id. Central did not cause Cascade to incur these.
 
 
 16
 We also reject the argument that deduction of administrative expenses was warranted because the bank's claim is disputed. Under the Code, a proof of claim is deemed allowed unless a party-in-interest objects. 11 U.S.C. Sec. 502(a) (1979). It is prima facia evidence of a valid claim. See S.Rep. No. 989, 95th Cong., 2d Sess. 62, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5848. Central filed a proof of claim to which Cascade did not object. Its argument that the claim is disputed is meritless.
 
 
 17
 We reject also Cascade's argument that the bankruptcy court authorized litigation of the claim in state court. Though Cascade asserted a counterclaim against Central in a state suit brought by Central, there is nothing in the record to demonstrate that the bankruptcy court ordered litigation of the disputed claim in state court. Rather, the language of the disclosure statement and plan contradicts this allegation. Cascade's plan states that "[d]isputes between unsecured creditors and creditors claiming to be secured shall be resolved by the Court...." The documents state that the bankruptcy court shall "[d]etermine all valid liens and claims (and amount) against the debtor and its property." The documents clearly provide that the bankruptcy court shall retain jurisdiction over all disputed claims. Cascade's claim is not supported by the record. Lacking specific findings of how each expense benefited Central, there is no basis in the record to uphold the award.
 
 
 18
 REVERSED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a)
 
 
 [1]
 Central Bank does not contest the payment of the costs associated with the sale of its secured collateral