**In re Robert Rex HIDDLESTON and Betty Jane Hiddleston, Debtors.**

**Bankruptcy No. 87–40173–12.**

United States Bankruptcy Court, D. Kansas.

Nov. 8, 1993.

**14**

Winton A. Winter, Jr., Stevens, Brand, Golden, Winter & Skepnek, Lawrence, KS, for debtors.

Tanya Sue Wilson, Asst. U.S. Atty., for U.S. on Behalf of its Agency, the Farmers Home Admin.

Eric C. Rajala, Standing Chapter 12 Trustee.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

The debtors, Robert Rex Hiddleston and Betty Jane Hiddleston, appear by their attorney, Winton A. Winter, Jr., of Stevens, Brand, Golden, Winter & Skepnek, Lawrence, Kansas. The United States of America, on behalf of its agency, the Farmers Home Administration ("FmHA"), appears by and through Lee Thompson, United States Attorney for the District of Kansas, and Tanya Sue Wilson, Assistant United States Attorney. The Chapter 12 Standing Trustee, Eric C. Rajala, also appears.

This is a core proceeding under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

Debtors' counsel, Winton A. Winter, Jr., applied for approval of attorney's fees and expenses in the amount of $5,633.91. His application also requested that $3,000.00 of escrowed proceeds from the sales of real estate secured to FmHA be applied to the fee award. FmHA objected. The parties presented oral arguments to the Court on June 30, 1992, and have filed written memoranda in support of their positions.

Since FmHA does not dispute the amount or reasonableness of the requested attorney's fees and expenses, the Court approves counsel's fee application in the amount of $5,633.91 under 11 U.S.C. § 330.

This dispute is about whether the parties had agreed that Mr. Winter would be paid from the sales proceeds, which he concedes are covered by FmHA's lien. If he fails to convince the Court that FmHA's agreement allows his fees to be paid from the escrowed sales proceeds, Mr. Winter's fallback position is that his fees should be paid from the escrowed funds under 11 U.S.C. § 506(c) because his services in conducting the sales benefited FmHA.

The facts are undisputed. Debtors filed for relief under Chapter 12 of the Bankruptcy Code on February 2, 1987. FmHA held a secured interest in the debtors' real estate and machinery. On July 15, 1987, the Court confirmed debtors' Chapter 12 plan. The plan called for FmHA's secured claim to be paid through the plan. The Order of Confirmation was entered on September 28, 1987.

FmHA received payments on the real estate and machinery on February 22, 1988, and January 10, 1989. In January 1990, debtors' counsel advised FmHA that his clients, who were already in default under the terms of the confirmed plan, could not cure the plan delinquencies and wanted to propose a modified plan. FmHA agreed to allow the debtors until the end of April 1990 to propose a sale of real estate and submit a final plan modification for consideration. Although debtors filed several amended plans in February and March of 1990, no modified plan has yet been approved by creditors or the Court.

By agreement with FmHA, the debtors conducted four separate sales of real estate parcels that were secured to FmHA. The first two sales occurred in June of 1990, the third in June of 1991, and the fourth in February of 1992. The funds being held in escrow are proceeds from the last two sales.

The debtors filed their third application for approval to sell real estate on May 16, 1991. In the application, the debtors requested au-

thority to sell 75 acres to Dale O. Flory. The application provided that the "net proceeds" would be paid to FmHA. The application defined "net proceeds" to mean gross sale price less closing costs and attorney's fees of $2,500.00. FmHA objected to the sale because the closing costs were not itemized and the application did not state the attorney to whom fees were to be paid nor for what purpose the services were rendered.

Counsel for the debtors and FmHA both signed the order approving the Flory sale, which was entered on June 21, 1991. The order provided, in part:

> 2. · That the Objection of FmHA has been withdrawn.
>
> .    .    .    .    .
>
> 5. That the sum of $1,500.00 from closing of the property may be withheld and retained in escrow in the trust account of Stevens, Brand, Lungstrum, Golden & Winter for payment of attorneys. fees due from debtors and may be paid to such attorneys only upon approval by this Court of an Application for Payment of Attorneys Fees.

(Order Approving Sale of Real Estate Pursuant to 11 U.S.C. § 1206 and 11 U.S.C. § 363(b) filed June 21, 1991, at 1–2.)

The fourth sale of real estate was approved by order entered February 27, 1992. This order was also signed by counsel for the debtors and by counsel for FmHA and contained the same language as set out in paragraph 5 of the June 21, 1991, order of sale.

■ The first question is whether the language of the orders approving real estate sale entitles Mr. Winter to pay his approved fees from the escrowed funds. He contends that the reservation made by FmHA in the agreed orders on the payment of attorney's fees was one of amount only—not one of authority to pay the fees from the proceeds.

FmHA contends that the language of both orders was intended to reserve its objection to the payment of any attorney's fees from sales proceeds. Although it had objected to the third sale, FmHA claims it only agreed to escrow the funds requested for unspecified attorney's fees in order to facilitate closing

the sale. FmHA says that its intent was to leave for a later time the determination of whether debtors' counsel was entitled to payment of any fees from the sales proceeds and that the language of the orders reflects this intent.

The question involves the indefinite wording of the orders:

> That the sum of ... from closing of the property may be withheld and retained in escrow in the trust account of ... for payment of attorneys fees due from debtors and may be paid to such attorneys only upon approval by this Court of an Application for Payment of Attorneys Fees.

The proceeds were escrowed in the firm trust account of debtors' counsel, Mr. Winter, and the language of the orders indicates that this was done "for payment of attorneys fees due from the debtors. . . ." But, neither the fact of the escrow in the trust account of debtors' attorney nor the fact that the orders refer to "attorneys fees due from the debtors" helps debtors' counsel. This is so because the orders go on to say that the escrowed proceeds "may be paid to such attorneys only upon approval by this Court of an Application for Payment of Attorneys Fees."

The orders simply provide for the retention of an amount of the proceeds in escrow. They do not limit the nature of any objection that may be raised to an application for approval of attorney's fees. While the phrase "attorneys fees due from debtors" does identify debtors' counsel as the party entitled to fees from the debtors, this alone does not evidence an intent that FmHA could not later object to an application for payment of those fees from escrow.

■ The case law on consent to use proceeds from the sale of a secured creditor's property to pay professional fees incurred in the sale cautions that consent should not be "lightly inferred." *In re Energy Cooperative,* 55 B.R. 957, 964 (Bankr.N.D.Ill.1985) (citations omitted).

The Court declines to adopt debtors' interpretation that because FmHA agreed to place funds in escrow, it was consenting to the payment of attorney's fees from the sale proceeds of its collateral. Rather, the Court

finds that the language used in the orders does not specifically allow or deny the payment of attorney's fees from the proceeds. Accordingly, the objection raised by FmHA is not precluded by the language of the orders approving the sales of real estate.

■ The next issue is whether counsel's fees should be approved under 11 U.S.C. § 506(c). Debtors' counsel contends FmHA has benefited from the sales of the real estate and therefore § 506(c) entitles counsel to retain the proceeds in the escrow account. Section 506(c) states:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

A party seeking to recover costs and expenses under § 506(c) has the burden of proving that the subsection is applicable. *In re Chicago Lutheran Hosp. Ass'n.*, 89 B.R. 719, 727 (Bankr.N.D.Ill.1988). An applicant under the section must establish not only that the expenses were reasonable and necessary, but must also show that the expenses were incurred primarily to benefit the creditor. *Brookfield Production Credit Ass'n v. Borron*, 738 F.2d 951, 952 (8th Cir.1984), citing *Brookfield Production Credit Ass'n. v. Borron*, 36 B.R. 445, 449 (E.D.Mo.1983). On the issue of benefit to the secured creditor, courts have construed § 506(c) narrowly. *Matter of CD Electric Co., Inc.*, 146 B.R. 786, 790 (Bankr.N.D.Ind.1992).

The district court decision in *Brookfield Production Credit Ass'n*, which was quoted by the Circuit Court in its affirming opinion, states:

> Section 506(c) narrowly confines recovery to the extent of any benefit to the secured creditor.; To recover, the debtor-in-possession must expend the funds primarily to benefit the creditor, who must in fact directly benefit from the expenditure. Expenses undertaken to improve the position of the debtor-in-possession, although indirectly benefiting the creditor, are not recoverable.... In sum, courts construing 506(c) appear to require the debtor-in-possession, who bears the burden of proving the benefit, to show that absent the costs expended the property would yield less to the creditor than it does as a result of the expenditure, although the provision does not expressly impose such a requirement.

*Brookfield Production Credit v. Borron*, 36 B.R. at 448 (citations omitted).

■ Other circuit courts that have ruled on this issue have also held that the benefit to the creditor must be primary and direct. *In re Parque Forestal, Inc.*, 949 F.2d 504, 512 (1st Cir.1991); *Matter of Delta Towers, Ltd.*, 924 F.2d 74, 77 (5th Cir.1991); *In re Cascade Hydraulics and Utility Services, Inc.*, 815 F.2d 546, 548 (9th Cir.1987); *In re Flagstaff Foodservice Corp.*, 762 F.2d 10, 12 (2nd Cir.1985); *In the Matter of Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982).

■ Debtors' counsel argues that FmHA benefited from the sales of the real estate because the value of the entire tract, if sold as a single parcel, may have been less than the debt owed to FmHA. He states:

> In the case at the bar, the value of the entire tract, if sold as a single parcel, may have been less that the debt owed to FmHA. However, the selling of separate parcels of the tract resulted in increasing the property value of the remaining tract. The acknowledged value of the remaining tract is in excess of the amount of the debt remaining due to FmHA. FmHA has thus benefited from the sale of these individual parcels by, first, receiving the "net proceeds" to be applied toward the debt owed and, second, by completely securing its claim due to the fact that the remaining tract is now of a value in excess of the remaining debt.

(Memorandum in Support of Application For Approval of Attorney's Fees filed July 10, 1992, at 6.)

FmHA has a different perspective on who has received the benefits from these sales. It contends that the fees and expenses of debtors' counsel, including those related to the sales of real estate, are directly related to debtors' attempt to reorganize; therefore, those fees and expenses are not properly

recoverable from a secured creditor under § 506(c). FmHA argues that there is no evidence that it would not have recovered the entire amount of its claim had it foreclosed on this property when the debtors defaulted under the plan. Lastly, FmHA suggests that the debtors have been able to retain their home and some acreage because they sold some of the real estate and that they may now be able to propose a feasible plan modification, rather than be forced off the property by foreclosure. These facts, it urges, make the debtors the primary beneficiaries of the sales.

The Court finds that debtors' counsel has not met his burden of proof in establishing that his fees incurred in connection with the sales of real estate primarily benefited FmHA. Except for his oral assertions, debtors' counsel presented nothing to show that FmHA benefited primarily and directly from these sales. Rather, the attorney's fees incurred by the debtors in selling the real estate appear to be simply general costs of administration. "Code § 506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate." *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982).

Accordingly, the Court denies counsel's request that the escrowed funds subject to FmHA's lien be applied to his fees and expenses. Counsel is directed to deliver the funds in the escrow account to FmHA in care of the United States Attorney for the District of Kansas within thirty (30) days from the date of this order. Counsel's application for fees is otherwise approved in the amount of $5,633.91.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. Rule 52(a).

IT IS SO ORDERED.