**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: K & L LAKELAND,
INCORPORATED, d/b/a JKJ Chevrolet
Sterling,
Debtor.

LOUDOUN LEASING DEVELOPMENT
COMPANY,

Plaintiff-Appellee,

RICHARD G. HALL,
Trustee-Appellee,

v.

FORD MOTOR CREDIT COMPANY,
Defendant-Appellant.

No. 96-1431

In Re: K & L LAKELAND,
INCORPORATED, d/b/a JKJ Chevrolet
Sterling,
Debtor.

LOUDOUN LEASING DEVELOPMENT
COMPANY,

Plaintiff-Appellant,

v.

FORD MOTOR CREDIT COMPANY,
Defendant-Appellee,

RICHARD G. HALL,
Trustee-Appellee.

No. 96-1531

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-1265-A, BK-91-14554-AB)

Argued: January 28, 1997

Decided: October 22, 1997

Before ERVIN and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

No. 96-1431 reversed and No. 96-1531 affirmed by published opin-
ion. Judge Ervin wrote the opinion, in which Judge Hamilton and
Senior Judge Phillips joined as to parts I, II, and III. Senior Judge
Phillips wrote an opinion concurring as to the result in part IV. Judge
Hamilton wrote a dissenting opinion as to part IV.

_____

**COUNSEL**

**ARGUED:** George Richard Pitts, DICKSTEIN, SHAPIRO &
MORIN, L.L.P., Washington, D.C., for Appellant. Robert Glenn
Mayer, MAYER & SCANLAN, P.C., Fairfax, Virginia, for Appellee
Loudoun Leasing; Bruce Wayne Henry, HENRY & HENRY, P.C.,
Fairfax, Virginia, for Appellee Hall. **ON BRIEF:** Guy S. Neal,
DICKSTEIN, SHAPIRO & MORIN, L.L.P., Washington, D.C., for
Appellant. Donna H. Henry, Dominique V. Sinesi, HENRY &
HENRY, P.C., Fairfax, Virginia, for Appellee Hall.

_____

**OPINION**

ERVIN, Circuit Judge:

This matter arises from the underlying bankruptcy of Debtor K & L
Lakeland (K & L), an automobile dealership. K & L had a lease

2

agreement for its car lot with Appellee/Cross-Appellant Loudoun Leasing Development Company (Loudoun), an entity controlled by the same persons behind K & L. Appellant/Cross-Appellee Ford Motor Credit (Ford Credit) provided floorplan financing to K & L, and, in exchange, possessed a perfected security interest in virtually all of K & L's assets. No rent was paid on the premises postpetition. In No. 96-1431, Ford Credit appeals the judgment surcharging it for that postpetition rent under 11 U.S.C. § 506(c). In this appeal, we reverse the district court's order affirming the bankruptcy court's opinion and order. In No. 96-1531, Loudoun cross-appeals its dismissal as the claimant upon the substitution of Trustee-Appellee/Cross-Appellee Richard G. Hall. In this cross-appeal, we affirm the district court's order affirming the bankruptcy court's opinion and order.

I.

K & L, the debtor in the underlying bankruptcy proceeding, was one of several automobile dealerships in Northern Virginia controlled by John W. Koons, Jr. K & L's business operated on a six-acre tract in Sterling, Virginia, owned by Loudoun, a partnership comprised of Koons and Ralph G. Louk, the "K" and "L" of K & L. Louk held bare legal title to the land as trustee for Loudoun. In October 1989, K & L and Louk entered into a lease agreement for $50,000/month for the premises at issue here. K & L subleased a portion to another Koons dealership, Saturn of Sterling.

Ford Credit provided K & L with floorplan financing in March 1991, and, in exchange, took back first-priority security interests in virtually all of K & L's assets, including its vehicle inventory, parts inventory, accounts receivable, furniture, fixtures, equipment, contract rights, general intangibles, and proceeds of the foregoing. On October 22, 1991, K & L filed for Chapter 11 bankruptcy. Because Ford Credit's liens encumbered nearly all the debtor's assets, K & L and Ford Credit entered into three consent orders that authorized and regulated K & L's use of cash collateral.

Although K & L continued to operate its business postpetition, it paid no rent to either Loudoun or Louk. In addition, K & L, as debtor-in-possession, took no steps to assume the lease agreement, and ulti-

3

mately the statutory period fixed for assuming or rejecting the lease expired. As the bankruptcy court noted, the lease was thus rejected by operation of 11 U.S.C. § 365(d)(4). See In re K & L Lakeland, Inc., 185 B.R. 20, 21 (Bankr. E.D. Va. 1995). Although§ 365(d)(4) instructs a debtor-in-possession to surrender the leasehold premises upon rejection, K & L continued to use Loudoun's property without paying rent. Moreover, neither Loudoun nor Louk initiated any action to regain possession.

In March 1992, Loudoun sought the allowance of an administrative claim for the unpaid postpetition rent. Since Ford Credit's liens encumbered virtually all the assets, Loudoun moved to collect the rent from Ford Credit's collateral pursuant to 11 U.S.C.§ 506(c). Shortly thereafter, the debtor's attempted reorganization failed, and on April 7, 1992, K & L ceased all business operations. Ford Credit obtained relief from the stay and began liquidating the assets. In July 1992, the debtor's case was converted to Chapter 7, and Trustee Hall was appointed to administer the estate.

In the meantime, another Koons dealership, JKJ Chevrolet, Inc., had filed for bankruptcy, and a creditor in that case, Reynolds & Reynolds Company (Reynolds), was pursuing its own§ 506(c) action against Ford Credit. The bankruptcy court heard the motions of both Loudoun and Reynolds in one consolidated, two-day trial in August 1992. The bankruptcy court determined as an initial matter that these administrative claimants had standing to pursue a§ 506(c) cause of action. As a result, the trustee in this case, Hall, withdrew his appearance and took no part in the evidentiary hearing that followed. The bankruptcy court subsequently granted Loudoun's request for an administrative expense claim in the amount of $166,079.23 and permitted Loudoun to surcharge Ford Credit under § 506(c) to recover this amount. Reynolds was also permitted to surcharge Ford Credit to satisfy its claim.

Ford Credit immediately appealed the decision involving Reynolds. Ultimately, we ruled that the plain terms of § 506(c) granted only trustees and debtors-in-possession, not administrative creditors, a right of action against a secured creditor's collateral. See In re JKJ Chevrolet, Inc., 26 F.3d 481 (4th Cir. 1994). After JKJ Chevrolet, Loudoun moved to join the trustee as a § 506(c) claimant in Ford

4

Credit's motion to alter or amend the judgment in favor of Loudoun, which had been held in abeyance pending the resolution of the Reynolds litigation. The bankruptcy court granted Loudoun's motion in December 1994 and subsequently issued an opinion on Ford Credit's motion on August 15, 1995.

In its opinion, the bankruptcy court first substituted Hall, the Chapter 7 trustee, for Loudoun and dropped Loudoun as a§ 506(c) claimant. K & L Lakeland, 185 B.R. at 23. It then ordered Ford Credit to pay the administrative expense award of $166,079.23 to Trustee Hall, instead of Loudoun. The bankruptcy court rejected Ford Credit's argument that there must be an actual expenditure before the estate may reimburse itself under § 506(c). Id. at 24. Instead, the bankruptcy court determined that "the non-payment of rent represents an unsecured, postpetition loan from the landlord," a"`loan' [that] is quantifiable insofar as we fixed the amount of Loudoun's claim at $166,079." Id. (emphasis in original). The court was particularly concerned that Ford Credit's argument

> would ignore situations in which the estate relies on credit to cover the costs of preserving or disposing of the secured party's collateral. In other words, secured creditors could elude § 506(c) claims, and thus receive a windfall, simply because the estate decided to use credit instead of cash. Such an outcome is absurd and would thwart the statute's obvious purpose. Accordingly, we hold that the unpaid, postpetition rent falls within the realm of "costs and expenses" that are recoverable under § 506(c).

Id.

The district court affirmed both holdings of the bankruptcy court. It found that the trustee was appropriately substituted since, after JKJ Chevrolet, Loudoun could not possess standing itself. J.A. at 181. As for the surcharge of Ford Credit being paid to the trustee, the court stated:

> [T]he reasoning as recited by the Bankruptcy Judge's careful and thorough memorandum opinion reveals ample evidence of the reasonableness and necessity of the efforts

5

taken to protect and preserve assets which constituted collateral for the secured claims of Ford Credit. It is clear that there was a benefit to Ford Credit in the continued operation of the bankrupt business. That the continued operation may have incidentally made the property more attractive to subsequent prospective purchasers does not detract from the benefit that accrued to Ford Credit. The court rejects the argument that there must be an actual expenditure by the trustee or debtor-in-possession to recover under 11 U.S.C. § 506(c). The estate is still liable for the unpaid rent, and ought not be penalized because it is too impecunious to pay the amount outstanding.

J.A. at 181-82.

As noted above, in No. 96-1431, Ford Credit appeals the surcharge. In No. 96-1531, Loudoun appeals its dismissal as administrative creditor following the substitution of the trustee as§ 506(c) claimant.

II.

In both appeals, the matters essentially arise from Ford Credit being surcharged for administrative rent under § 506(c) of the Bankruptcy Code, 11 U.S.C. The United States Bankruptcy Court for the Eastern District of Virginia exercised jurisdiction pursuant to 28 U.S.C. §§ 151, 157. The district court possessed jurisdiction to hear the initial appeals under 28 U.S.C. § 158(a). We possess appellate jurisdiction under 28 U.S.C. § 158(d).

Because in this case the district court sat as an appellate court in bankruptcy, our review of the district court's decision is plenary. In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995); In re Varat Enters., Inc., 81 F.3d 1310, 1314 (4th Cir. 1996). We review the bankruptcy court's factual findings for clear error, while we review questions of law de novo. Varat, 81 F.3d at 1314; Fed. R. Bankr. P. 8013. Obviously, the "clearly erroneous" standard will not insulate findings "made on the basis of the application of incorrect legal standards." Stanley, 66 F.3d at 667 (internal quotation marks and citation omitted).

6

III.

Loudoun's appeal of its dismissal in No. 96-1531 is meritless. Loudoun simply seeks to have us reverse our decision in In re JKJ Chevrolet, Inc., 26 F.3d 481 (4th Cir. 1994), and for essentially the reasons that we already considered and rejected there.**1** While it is true that other circuits have permitted administrative creditors to bring claims under 11 U.S.C. § 506(c), see, e.g., IRS v. Boatmen's First Nat'l Bank, 5 F.3d 1157 (8th Cir. 1993); In re Palomar Truck Corp., 951 F.2d 229 (9th Cir. 1991), cert. denied sub nom. General Elec. Capital Corp. v. North County Jeep & Renault, Inc., 506 U.S. 821 (1992); In re Parque Forestal, Inc., 949 F.2d 504 (1st Cir. 1991); In re Delta Towers, Ltd., 924 F.2d 74 (5th Cir. 1991); In re McKeesport Steel Castings Co., 799 F.2d 91 (3d Cir. 1986), we addressed their holdings and disagreed with their analyses. See JKJ Chevrolet, 26 F.3d at 484-86. In short, we held:

> The language of § 506(c) is clear and unambiguous. It grants only trustees [and debtors-in-possession] the authority to seek recovery of postpetition costs and expenses from the collateral of a secured creditor. . . .
>
> Allowing a claimant to proceed directly against a secured creditor would circumvent [the Code's] distribution scheme, potentially causing an inequitable division of the estate. . . . We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly.

Id. at 484 (footnotes omitted) (citations omitted).

_____

**1** Even were we inclined to do so, which we are not, it is well-settled that one panel of this court may not overrule another panel's decision. See Jones v. Angelone, 94 F.3d 900, 905 (4th Cir. 1996); Norfolk and Western Ry. Co. v. Director, Office of Workers' Compensation Programs, 5 F.3d 777, 779 (4th Cir. 1993); Caldwell v. Ogden Sea Transp., Inc., 618 F.2d 1037, 1041 (4th Cir. 1980); North Carolina Utils. Comm'n v. FCC, 552 F.2d 1036, 1044 n.8 (4th Cir.), cert. denied, 434 U.S. 874 (1977).

We did leave open the possibility that "a bankruptcy court could grant derivative standing to a claimant, allowing the claimant to prosecute a § 506(c) action on behalf of the estate." Id. at 485 n.7 (citation omitted). However, that is not what Loudoun is seeking here, nor is it necessary given the proper substitution of the trustee.

We see no reason to depart from our clearly controlling precedent in JKJ Chevrolet. Loudoun simply has no standing as an administrative creditor to seek to surcharge a secured creditor under § 506(c) for its own benefit. The district court's order affirming the bankruptcy court's dismissal of Loudoun is affirmed.

IV.

The issue of the surcharge of postpetition rent in Ford Credit's appeal in No. 96-1431 remains. Although Judge Phillips agrees with me that the bankruptcy court's order in this appeal must be reversed, we are not in complete agreement as to the means to that end. Judge Phillips joins in Part IV. B of this opinion (and in the result), but he does not join in Part IV. A. For the reasons which follow, I believe that the bankruptcy court was incorrect as a matter of law in its holding that § 506(c) does not require an actual expenditure in order for the estate to be reimbursed.

A.

As we noted in JKJ Chevrolet, 26 F.3d at 483, "[g]enerally, administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral." Section 506(c) codifies a common law exception to this general rule. That section states:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c). In JKJ Chevrolet we construed the statute narrowly only to allow "the trustee to recover administrative expenses

8

from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor." JKJ Chevrolet, 26 F.3d at 483 (emphasis added).

The common law exception permitted a holder of secured collateral to be surcharged only when "a debtor, debtor in possession or trustee had expended funds to preserve or dispose of the very property (collateral) securing the debt." In re Visual Indus., Inc., 57 F.3d 321, 324 (3d Cir. 1995). A variety of expenditures were allowed--"appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs," 3 Lawrence P. King et al., Collier on Bankruptcy ¶ 506.06, at 506-60 (15th ed. 1996)--but there were two keys: (1) there had to be actual expenditures that (2) directly related to the preservation or disposal of the secured creditor's collateral. Cf. Visual Indus., 57 F.3d at 325. Congress's intent in enacting § 506(c) was to codify both aspects:

> Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.

124 Cong. Rec. H11089 (Sept. 28, 1978) (statement of Rep. Edwards), reprinted in 1978 U.S.C.C.A.N. 6451 (emphases added).**2** This legislative intent is fully consonant with the plain meaning of the statute that we determined in JKJ Chevrolet.

_____

**2** I believe that the phrase "expends money" supports the proposition that an actual expenditure must be made in order to support a surcharge under § 506(c). According to Webster's Third New International Dictionary (1993), "expend" as a transitive verb means "to pay out or distribute: spend" and as an intransitive verb "to spend money." Id. at 799. It seems plain that both this definition and Congress's intent in § 506(c), expressed through the history quoted above, requires some affirmative action on the part of the one who would "expend."

9

The parties in this case agree that Ford Credit may be surcharged for the postpetition rent only if that rent (1) was incurred primarily to protect or preserve Ford Credit's collateral, (2) provided a direct and quantifiable benefit to Ford Credit, and (3) was reasonable and necessary.**3** See Br. of Appellant at 26; Br. of Trustee at 10; In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 602 (Bankr. E.D. Va. 1985); In re Lunan Family Restaurants L.P., 192 B.R. 173, 178 (Bankr. N.D. Ill. 1996); Visual Indus., 57 F.3d at 325-26; In re Hiddleston, 162 B.R. 13, 16 (Bankr. D. Kan. 1993); In re Cascade Hydraulics and Util. Serv., Inc., 815 F.2d 546, 548 (9th Cir. 1987); In re Flagstaff Foodservice Corp., 762 F.2d 10, 12 (2d Cir. 1985). The parties obviously disagree as to whether those criteria are satisfied here.

More particularly, Ford Credit argues that the bankruptcy estate can only be reimbursed for actual expenditures that satisfy these criteria. The bankruptcy court acknowledged the appeal of this interpretation but rejected it because the estate had nevertheless incurred a liability for the rent and ought to be able to rely on credit, instead of cash, to cover the costs of preserving or disposing of the secured party's collateral. K & L Lakeland, 185 B.R. at 24. I believe that Ford Credit's argument is not only appealing but amply supported by the case law. See, e.g., Flagstaff Foodservice, 762 F.2d at 12 ("The debtor in possession also must show that its funds were expended primarily for the benefit of the creditor and that the creditor directly benefited from the expenditure." (emphases added)); Visual Indus., 57 F.3d at 324-26 (speaking generally in terms of "expenditures" and "expended funds"); In re Senior-G & A Operating Co., 957 F.2d 1290, 1298-1300 (5th Cir. 1992) (speaking generally in terms of "expenditures"); In re P.C., Ltd., 929 F.2d 203, 205 (5th Cir. 1991) (speaking, with regard to satisfying the criteria for a § 506(c) claim,

_____

**3** Ford Credit argues that we must first determine whether § 506(c) even applies to this case. While it is true that rent is not among the common law administrative expenses traditionally allowed, see supra, nothing in the language of the statute expressly, or even implicitly, excludes postpetition rent from being an administrative cost or expense that may be surcharged in appropriate circumstances. I agree with the trustee that the proper application of these three criteria in a§ 506(c) claim forecloses the possibility that a secured creditor will be forced to fund improper administrative expenses.

10

in terms of "expenditure" and "amounts expended"); <u>In re Delta Towers, Ltd.</u>, 924 F.2d 74, 76 (5th Cir. 1991) (same); <u>Cascade Hydraulics</u>, 815 F.2d at 548 (stating that the claimant "must establish in quantifiable terms that it <u>expended</u> funds directly to protect and preserve the collateral" (emphasis added)); <u>Brookfield Prod. Credit Ass'n v. Borron</u>, 738 F.2d 951, 952 (8th Cir. 1984) ("To recover [under § 506(c)] the debtor in possession <u>must expend</u> the funds primarily to benefit the creditor, who must in fact directly benefit from the expenditure." (emphasis added) (quoting <u>Brookfield Prod. Credit Ass'n v. Borron</u>, 36 B.R. 445, 448 (E.D. Mo. 1983) (citing <u>In re Sonoma V</u>, 24 B.R. 600, 603 (B.A.P. 9th Cir. 1982)))); <u>Hiddleston</u>, 162 B.R. at 16 (same); <u>In re Plaza Family Part.</u>, 95 B.R. 166, 173 (Bankr. E.D. Cal. 1989) (same); <u>In re Air Center, Inc.</u>, 48 B.R. 693, 694 (Bankr. W.D. Okla. 1985) (analyzing the legislative history as "clearly impl[ying] that the trustee may recover when he or she <u>has spent money</u> for the benefit of the holder of the secured claim" (emphasis added)).**4** These cases are merely illustrative. There are dozens of lower court cases that use these same terms. While it is true that these cases use these terms in the context of setting forth the requisite elements of a claim under § 506(c), and not, as I do, to establish the <u>pre</u>requisite of actual expenditure, it strains belief that so many courts would have chosen their words so carelessly without awareness of the common meaning of "expend," especially since many of these courts (although not all) also cite the relevant passage of legislative history.

One bankruptcy court that has directly faced the issue has repeatedly and consistently held that § 506(c) requires an "actual expenditure of money." <u>See In re Lindsey</u>, 59 B.R. 168, 170-71 (Bankr. C.D. Ill. 1986) (disallowing a surcharge for the value of labor and for rent not paid since neither was an actual expenditure of money); <u>In re Worrell</u>, 59 B.R. 172, 174-75 (Bankr. C.D. Ill. 1986) (same; consoli-

---

**4** The bankruptcy court distinguished <u>Air Center</u> on the ground that "the costs and expenses at issue there arose <u>post-confirmation</u>, and thus were not chargeable to the estate." <u>K & L Lakeland</u>, 185 B.R. at 24 n.2 (emphasis in original). However that may be, the <u>Air Center</u> court was interpreting the exact same legislative history that supports Ford Credit's point here that sums must have actually been expended before they are reimbursable to the estate.

11

dated with <u>Lindsey</u>); <u>In re Kotter</u>, 59 B.R. 266, 269 (Bankr. C.D. Ill. 1986) (disallowing a surcharge for the unpaid wages of the debtor as well as unpaid "rent" for use of the debtors' pasture and machinery since not expenditures of money); <u>In re Settles</u> , 75 B.R. 229, 230-31 (Bankr. C.D. Ill. 1987) (disallowing a surcharge for the value of labor since there was no expenditure of money). None of these cases have been disavowed, repudiated, or overruled. At least two other courts have similarly required that there have been an actual expenditure in order to obtain reimbursement under § 506(c). <u>See In re Mall at One Assocs., L.P.</u>, 185 B.R. 981, 990 (Bankr. E.D. Pa. 1995) (disallowing a surcharge for the "repayment" of real estate taxes because the taxes were never paid); <u>In re Stegeman</u>, 1991 WL 541134 at *3 (Bankr. E.D. Wash. Jan. 25, 1991) (disallowing a surcharge"to the extent the debtors are seeking compensation for their own efforts for which <u>money was not expended</u>" (emphasis added)); <u>cf. In re Estate Design & Forms, Inc.</u>, 200 B.R. 138, 142-43 (E.D. Mich. 1996).

As already noted, the legislative history quoted above, <u>see supra</u>; <u>Air Center</u>, 48 B.R. at 694, also fully supports this interpretation. Finally, our own plain meaning reading of § 506(c) in <u>JKJ Chevrolet</u>, 26 F.3d at 483 (construing the statute narrowly only to allow "the trustee to recover administrative expenses from the collateral of a secured creditor to the extent that the <u>expenditures</u> benefit the secured creditor" (emphasis added)), logically counsels this approach.**5**

_____

**5** I do not find the authority of <u>IRS v. Boatmen's First Nat'l Bank</u>, 5 F.3d 1157 (8th Cir. 1993), to be particularly persuasive in this context. In the first place, the IRS would not even have possessed standing to assert its claim under our circuit's clear precedent in <u>In re JKJ Chevrolet, Inc.</u>, 26 F.3d 481 (4th Cir. 1994). Second, because Judge Bowman in his dissent would not have found standing, only two members of the panel passed on the issue of whether the unpaid taxes were a "loan" and thus properly reimbursable under § 506(c). Most importantly, however, that case is entirely predicated on a secured creditor who consented to the "loan." The court makes that abundantly clear three times in the same paragraph:

> <u>It is important that the creditor[ ] in . .. the instant case agreed to the post-petition preservation of the debtor business with an eye toward a better return on the collateral</u>. .. . The dry cleaning stores were maintained as going concerns in part because the

Although the courts below express policy concerns about situations where the estate needs to rely on credit, perhaps because it is too impecunious, it must be remembered that this credit would have to be extended to the estate to benefit primarily and directly the secured creditor's collateral. In most of these situations I believe that, logically and typically, the secured creditor would consent to the extension of credit for the preservation of its collateral, and naturally, then, there would be no question of surcharging the secured creditor for that expense.

Moreover, other sound policy principles are fulfilled by this interpretation. I find persuasive and agree with the viewpoint expressed by Chief Judge Bullock in a well-reasoned opinion that a strong line of cases

> stand[s] for the proposition that the expenses which benefit the entire estate, such as those for the debtor's business lease, cannot be shifted from the debtor's estate to the secured creditors under the rubric of "cost of preservation." Section 506(c) does not convert ordinary administrative expenses into preservation costs through a broad definition of benefit. Such an exception would swallow the rule that lien creditors are supposed to pass through bankruptcy "un-

_____

> payroll taxes were not paid. It follows then that the eventual payment of those taxes and the ensuing interest and penalties should be charged against a secured creditor who agrees to expenses that will be incurred to preserve the collateral. In this case, not only did the creditor agree to the preservation of the debtor business as a going concern, which by necessity included paying payroll taxes, but it also received an overall benefit from that preservation . . . .

Id. at 1160 (emphases added). Had Ford Credit agreed to the nonpayment of rent to keep the dealership afloat, then Boatmen's Bank would be probative, but then we would have a different case than that presented to us. Finally, I note that Mall at One, supra, came to the opposite conclusion with regard to unpaid taxes, albeit real estate taxes.

13

> affected." H.R. Rep. 598, 95th Cong., 2d Sess. 357 (1977),
> <u>reprinted in</u> 1978 U.S. Code Cong. & Ad. News 5963, 6313.

<u>C.I.T. Corp. v. A & A Printing, Inc.</u>, 70 B.R. 878, 881 (M.D.N.C. 1987) (other citations omitted) (analyzing <u>In re Wyckoff</u>, 52 B.R. 164 (Bankr. W.D. Mich. 1985); <u>In re Trim-X, Inc.</u>, 695 F.2d 296 (7th Cir. 1982); <u>In re Sonoma V</u>, 24 B.R. 600 (B.A.P. 9th Cir. 1982)). Furthermore, § 506(c) should not be read to "provide a means of wealth transfer from secured to unsecured creditors." <u>Id.</u> at 883 (citing Thomas Jackson, The Logic and Limits of Bankruptcy Law 187-89 (1986)). This principle is especially compelling here where Ford Credit would, in effect, be paying those who defaulted on their obligations to it. I am particularly troubled by the apparent self-dealing between a debtor and a landlord both essentially controlled by the same two persons. It certainly flies in the face of common sense, as well as the canons of statutory interpretation, to believe the Bankruptcy Code intends a secured creditor to have to pay the very people who defaulted on their obligations, once the corporate veils are stripped aside.

Finally, as a general matter, no § 506(c)"recovery should be permitted if the expenditure was . . . the independent duty of the debtor, debtor in possession or trustee to maintain its property (even if the value of the collateral increased as an incidental result thereof)," 3 <u>Collier on Bankruptcy</u>, <u>supra</u>, ¶ 506.06, at 506-69, as surely the payment of rent must be.

Based on a <u>de novo</u> review, I would conclude that the bankruptcy court was incorrect as a matter of law in its holding that § 506(c) does not require an actual expenditure in order for the estate to be reimbursed. K & L did not pay postpetition rent or attempt to do so, even on "credit." Nor did K & L surrender the leasehold premises upon the statutory rejection of the lease. Loudoun did not seek to collect rent, affirmatively offer to extend "credit" or make a "loan," or attempt to regain possession. In no sense of the term was there an actual expenditure by the estate to preserve or dispose of Ford Credit's collateral, let alone one primarily and directly for Ford Credit's benefit. I would hold that Ford Credit may not be surcharged for postpetition rent in these circumstances where case law, legislative intent, our own previ-

14

ous narrow construction of the statute, sound policy principles, and common sense counsel against it.

B.

As a final matter, we would also note that the bankruptcy court did not follow its own sound precedent that a bankruptcy court must "make affirmative findings" concerning the requirements of a § 506(c) claim "before authorizing a charge against the collateral." In re Bob Grissett Golf Shoppes, Inc., 50 B.R. 598, 602 (Bankr. E.D. Va. 1985). In the instant case, notwithstanding the lack of actual expenditures, the bankruptcy court failed to adequately show that the postpetition rent was incurred primarily to protect or preserve Ford Credit's collateral and that it provided a direct and quantifiable benefit to Ford Credit.

Although Trustee Hall attempts to construct an elaborate explanation of how the bankruptcy court fulfilled this duty, see Br. of Trustee at 15-20, the record does not support that conclusion. The opinion itself states, in a conclusory fashion, only that the "loan" of rent "is quantifiable insofar as we fixed the amount of Loudoun's claim at $166,079." K & L Lakeland, 185 B.R. at 24 (emphasis in original). In open court at the end of the evidentiary hearing, however, all the bankruptcy court stated was

> There is some dispute about whether or not they[Ford Credit] had--or did exercise control. However, the intention was--I think it was to exercise control. And that was up to them as to how they enforced that situation.
>
>  I think also, here, it has been proven that there is a benefit --or there was a benefit to Ford Motor Credit Company in this company--in the situation continuing, so that they could liquidate the various and sundry automobiles, new automobiles, and all the other items involved. Was there a benefit?

J.A. at 600-01. The court further decided that, on the basis of equity, it would strike the provision of the cash collateral orders that specifi-

15

cally stated that Ford Credit was not consenting to liability for the claims of administrative creditors.**6** J.A. at 603-04. And finally, the court declared that $40,000/month was the proper rental value for the property that Ford Credit could be surcharged with from October 22, 1991, to April 7, 1992, less a credit for rent received from the sublessee. J.A. at 604-05, 608.

These so-called "affirmative findings" are scattered and not focused on the § 506(c) criteria. There was no direct finding that the rent was incurred primarily to protect Ford Credit's collateral. Indeed, as indicated above, we fail to see how this prong can be satisfied since Loudoun made no attempt to collect the rent or indicate in any affirmative way that it intended to "loan" the rent payments to K & L, the debtor-in-possession. And the court certainly provided no rationale linking the $166,079 surcharge to a direct and quantifiable benefit that Ford Credit received for the preservation of its collateral. The district court's equally conclusory assertion that "[i]t is clear that there was a benefit to Ford Credit in the continued operation of the bankrupt business," J.A. at 181, is beside the point. "Merely providing some benefit to the debtor . . . does not satisfy § 506(c)'s requirement" that the benefit be direct and inure to the secured creditor for the preservation or disposition of its collateral. In re Visual Indus., Inc., 57 F.3d 321, 327 (3d Cir. 1995) (emphasis in original).

V.

In sum, Loudoun's appeal is meritless. Only a trustee or debtor-in-possession may properly pursue a claim for administrative expenses under 11 U.S.C. § 506(c). We affirm the order below in No. 96-1531.

In No. 96-1431, Ford Credit's appeal of the surcharge to it of post-petition rent, we determine that the bankruptcy court was incorrect as a matter of law and therefore reverse the order below surcharging Ford Credit with the postpetition rent.

_____

**6** The bankruptcy court did so despite its previous recognition that "consent is not to be lightly inferred." Bob Grissett, 50 B.R. at 603 (internal quotation marks and citation omitted).

16

No. 96-1431 is
REVERSED.

No. 96-1531 is
AFFIRMED.

PHILLIPS, Senior Circuit Judge, concurring in part and concurring in the judgment:

I concur in Parts I, II, III, and IV.B of Judge Ervin's lead opinion, and in the court's judgment which affirms the district court's order in No. 96-1531, and reverses that court's order in No. 96-1431. I write separately only to say that I would reverse in No. 96-1431 solely on the grounds spelled out in Part IV.B. of Judge Ervin's opinion, and, without deciding the issue, not upon the ground relied upon in Part IV.A--that the surcharged rent had not been paid, but only incurred as debt.

HAMILTON, Circuit Judge, concurring in part and dissenting in part:

My two-fold disagreement with Judge Ervin's lead opinion concerns only Part IV of his opinion. First, I cannot agree with his conclusion in Part IV.A that 11 U.S.C. § 506(c) authorizes the bankruptcy trustee to surcharge a secured creditor for an administrative expense only if there has been an "actual expenditure" made. Second, I cannot agree with Judge Ervin's conclusion in Part IV.B that the district court failed to make adequate findings that Ford Motor Credit Company (Ford Credit) incurred a direct and quantifiable benefit through the unpaid rental expenses. Accordingly, I concur in Parts I, II, and III of Judge Ervin's lead opinion and dissent from Part IV.B.*

I.

In Part IV.A of his opinion, Judge Ervin concludes that the bankruptcy court erred as a matter of law in holding that § 506(c) does not

_____

*Because Part IV.A of Judge Ervin's opinion did not garner a majority, there is no need to dissent therefrom, and I merely note my disagreement as set forth below.

17

require an actual expenditure in order for the estate to be reimbursed. Since it is undisputed that K & L Lakeland (K & L) did not actually pay the rental expenses the Trustee seeks from Ford Credit under § 506(c), Judge Ervin holds that Ford Credit may not be surcharged for those expenses.

I believe that Judge Ervin's analysis is flawed for several reasons. First, in concluding that § 506(c) requires an actual expenditure, Judge Ervin relies primarily on the "expense" or "expenditure" language contained in § 506(c) and numerous decisions interpreting § 506(c). Judge Ervin's sole focus on the word"expense," however, ignores the fact that § 506(c) also permits the recovery of "reasonable, necessary costs." See 11 U.S.C.§ 506(c) ("The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses . . . .") (emphasis added). A "cost" is defined as "the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered" and as "an item of outlay incurred in the operation of a business enterprise." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 515 (1981) (emphasis added); see also Russello v. United States, 464 U.S. 16, 21 (1983) (where statutory term is not defined, "[t]his silence compels us to `start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting Richards v. United States , 369 U.S. 1, 9 (1962))). Thus, by its plain language, § 506(c) permits the bankruptcy trustee to recover costs that have not actually been paid, but rather have accrued in order to preserve or dispose of secured assets.

Second, Judge Ervin's reliance on the "expenditure" or "expense" language used by courts in various decisions is misplaced in light of the fact almost none of these courts actually addressed whether § 506(c) requires an actual expenditure or, alternatively, whether the incurrence of a cost or the extension of credit suffices for recovery under § 506(c). See, e.g., In re Visual Indus., Inc., 57 F.3d 321, 324-26 (3d Cir. 1995); In re Senior-G & A Operating Co., Inc., 957 F.2d 1290, 1298-1300 (5th Cir. 1992). Instead, these courts merely refer to an "expense" or "expenditure" in the context of a general discussion about the requirements of § 506(c). In addition, the only other circuit court of appeals to consider the issue, the Eighth Circuit, has rejected the argument that because a debt was merely incurred, rather than an

18

expenditure paid, § 506(c) does not permit the secured creditor to be surcharged. See IRS v. Boatmen's First Nat'l Bank, 5 F.3d 1157, 1160 (8th Cir. 1993) (holding that unpaid payroll taxes could be surcharged to secured creditor even though no funds were advanced to the debtor-in-possession or to the bankruptcy trustee).

Finally, the most significant problem with Judge Ervin's conclusion in Part IV.A of his opinion is that his analysis and resulting conclusion undermine the central purpose of § 506(c), which is to prevent a secured creditor from gaining a windfall at the expense of the estate. See In re JKJ Chevrolet, Inc., 26 F.3d 481, 483 (4th Cir. 1994). Under Judge Ervin's reasoning, even where a secured creditor implicitly consents to the continued operation of a business by entering into post-petition cash collateral agreements, as long as no cash changes hands, the cost incurred cannot be surcharged to the secured creditor, regardless of the extent of the benefit to the secured creditor. Such a conclusion not only is based on an artificial distinction between an expenditure that has actually been paid and a debt that has been merely incurred, but also permits the very windfall § 506(c) was designed to prevent.

For these reasons, I would hold that § 506(c) does not require an actual cash expenditure, but rather permits the bankrupt estate to recover administrative expenses where a debt merely has been incurred, as long as the other requirements of § 506(c) are satisfied. A contrary interpretation is not supported by either the text of § 506(c) or the case law interpreting that text and would defeat the purpose of § 506(c) by permitting a secured creditor to reap a direct benefit without reimbursing the bankrupt estate.

II.

In Part IV.B of Judge Ervin's opinion, which is joined by Senior Judge Phillips, Judge Ervin concludes that the bankruptcy court in this case also erred when it failed to make affirmative findings concerning the requirements of § 506(c) before permitting the Trustee to surcharge Ford Credit for the unpaid rental expense. I respectfully disagree.

In order to invoke § 506(c), the claimant must show: (1) the expenditure was necessary; (2) the amounts expended were reasonable; and

19

(3) the expenditure conferred a direct benefit on the secured creditor. See In re Visual Indus., 57 F.3d at 325; In re P.C., Ltd., 929 F.2d 203, 205 (5th Cir. 1991). In this case, although the bankruptcy court's articulation of its findings may not be a model of clarity, the bankruptcy court clearly found that Ford Credit directly benefitted from the continued operation of K & L because it was able to liquidate both new vehicles and parts that otherwise would have been sold at a reduced price.

This finding is supported by the record. The evidence before the bankruptcy court indicated that at the time K & L filed its bankruptcy petition, it was approximately $170,000 "out of trust" on its floor-plan financing with Ford Credit. By enabling K & L to continue its operations as an automobile dealership, Ford Credit was able to recoup all of those funds, and sixty-five new vehicles were sold by K & L post-petition. Thus, Ford Credit was able to liquidate some of its collateral and avoid having to sell that collateral at a lower price because K & L had gone out of business. With regard to the requirement that the amounts expended be "reasonable," the bankruptcy court heard evidence as to the reasonable rental rate of the property on which K & L operated and concluded that a reasonable rate was $40,000 per month based on that testimony. The amount allowed by the bankruptcy court was determined by its assessment of what constituted a "reasonable amount" expended under the circumstances. Finally, regarding the requirement that the expenditure be necessary, the bankruptcy court recognized that the amount surcharged to the administrative creditor had to be both reasonable and necessary, and implicitly found that the $40,000 monthly rental expense was both reasonable and necessary. In addition, it would be illogical to suggest that the use of the physical property on which the business was located was not a necessary expense to the continued operation of the dealership.

In sum, the bankruptcy court noted each requirement of § 506(c), considered the relevant evidence, and found that each requirement was satisfied. Because the record supports the bankruptcy court's findings, I would affirm the district court's order affirming the bankruptcy court's order surcharging Ford Credit for the unpaid rental expenses incurred by K & L. Accordingly, I join in Parts I, II, and III of Judge Ervin's lead opinion and dissent from Part IV.B.

20